# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1045

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Chance Lee Wade Eagle, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2007
Filed: August 21, 2007 (corrected 8/29/07)

_____

Before LOKEN, Chief Judge, COLLOTON and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Chance Eagle was convicted of involuntary manslaughter in Indian country, *see* 18 U.S.C. §§ 1112, 1153, he appealed, raising a plethora of evidentiary issues. We affirm.

## I.

Mr. Eagle and three teenage women were in his vehicle when it collided with another vehicle, killing its driver. At trial, the government maintained that Mr. Eagle was driving his vehicle while intoxicated when the accident occurred; Mr. Eagle

1

sought to prove that one of the teenagers was driving. Mr. Eagle contends that the district court should have allowed him to impeach two government witnesses with extrinsic evidence of their out-of-court statements that one of the teenagers was driving.

At trial, Don Grey Day (an employee at the Prairie Knights Casino Quik Mart where Mr. Eagle and the teenagers stopped at least twice before the accident) testified that Mr. Eagle was driving the vehicle shortly before the collision. Katrina Donahue, one of the teenagers in Mr. Eagle's vehicle, testified that Mr. Eagle was driving when the accident occurred. Mr. Eagle sought to show that both of these statements were inconsistent with out-of-court statements that the witnesses had made.

Mr. Eagle maintains that on the day of the accident Mr. Grey Day told Linda Eagle (Mr. Grey Day's co-worker and Mr. Eagle's aunt) that he saw one of the teenagers driving Mr. Eagle's vehicle. Mr. Eagle also asserts that Jay Soft overheard Ms. Donahue tell her mother that one of the other teenagers was driving. Upon questioning from Mr. Eagle's counsel, both Mr. Grey Day and Ms. Donahue denied making the prior inconsistent statements. Mr. Eagle then sought to impeach these witnesses by having Ms. Eagle and Ms. Soft testify that the witnesses had, in fact, made the inconsistent statements. The trial court ruled, however, that the evidence was inadmissible hearsay.

The Federal Rules of Evidence define hearsay as an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Since Mr. Eagle offered the testimony of Ms. Eagle and Ms. Soft to impeach the government witnesses by showing that they had made statements contrary to their trial testimony, not to establish the truth of those prior inconsistent statements, the excluded evidence was not hearsay. And although Federal Rule of Evidence 613(b) permits the admission of extrinsic evidence of prior inconsistent statements only where the witness is "afforded an opportunity to explain or deny" the statement and "the

opposite party is afforded an opportunity to interrogate the witness," these preconditions were satisfied here. We do not see, moreover, any basis for concluding that the probative value of the evidence was outweighed by the danger of unfair prejudice or the other considerations that are set out in Federal Rule of Evidence 403.

The government argues that the court properly excluded the evidence because it was admissible only for impeachment purposes and Mr. Eagle was really seeking to introduce it as substantive evidence on the question of who was driving the vehicle. But this argument is based on pure conjecture. Furthermore, the government does not direct us to any case that holds that a party's subjective motive for introducing this kind of evidence is relevant to the question of its admissibility, and we do not see how it can be. The trial court therefore erred in excluding the extrinsic evidence.

A mere showing of error does not, of course, entitle Mr. Eagle to a new trial; he must also establish that the error harmed him. An error is harmless if we conclude that "no substantial rights of the defendant were affected and that the error did not influence or had only a very slight influence on the verdict." *United States v. Wilcox*, 50 F.3d 600, 603 (8th Cir. 1995).

Had the evidence been admitted, the government would have been entitled to an instruction that the jury could use the evidence only in judging the witnesses' credibility and not as substantive evidence of who was driving the vehicle. In addition, the value of Ms. Eagle's impeachment testimony would itself have been diminished by evidence that brought her own credibility into question. Ms. Eagle would have testified that Mr. Grey Day made his statement to her during a third visit that the defendant and the teenagers made to the Quik Mart. But none of the other witnesses testified that there was a third visit and the surveillance video from Quik Mart, which the government played for the jury, does not reveal any such visit.

3

Even if the evidence would have affected the jury's view of the credibility of Mr. Grey Day and Ms. Donahue, neither of these witnesses was essential to the government's case. Mr. Grey Day did not address the key issue before the jury, namely whether Mr. Eagle was driving at the time of the collision; he testified that he saw Mr. Eagle driving the car at the Quik Mart fifteen miles from the crash site. And the two other teenagers in Mr. Eagle's car corroborated Ms. Donahue's testimony that the defendant was driving at the time of the accident. In addition, the government offered testimony from another witness, Margaret Gates, from which the jury could infer that Mr. Eagle was the driver immediately prior to the collision. We therefore conclude that excluding the evidence was harmless.

Mr. Eagle also argues that we should reverse the district court's judgment because the court's errors violated his constitutional right under the fifth and sixth amendments to present witnesses in his defense. *See United States v. Turning Bear*, 357 F.3d 730, 741 (8th Cir. 2004). Assuming without deciding that a constitutional violation did occur, we are satisfied that the errors were "harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24 (1967). Because, as we have already said, the evidence of Mr. Eagle's guilt was strong and the probative weight of the excluded evidence was relatively weak, we are confident that the "error[s] complained of did not contribute to the verdict obtained." *See id.*

II.

Mr. Eagle maintains that the trial court erred in excluding evidence that his brother was acquitted of a criminal offense in a prior trial. He contends that his sixth amendment right to confront witnesses was violated when he was prevented from using this evidence to cross-examine the two teenagers who, along with Ms. Donahue, were riding in Mr. Eagle's vehicle and testified that he was driving. He also argues that the court's ruling violated Rule 613, which allows defendants to impeach adverse witnesses based on their bias. *See United States v. Abel*, 469 U.S. 45, 51 (1984).

4

The confrontation clause guarantees defendants an opportunity to show the bias of the witnesses against them, *see Abel*, 469 U.S. at 50, and Mr. Eagle contends that he was prevented from showing that the two teenagers had a motive to implicate him in a crime. One of the teenagers had previously accused Mr. Eagle's brother, Shiloh, of sexual assault, and both of them had testified against Shiloh at the trial in which he was acquitted of the charge. Mr. Eagle argues that he should have been permitted to cross-examine the two teenagers about the acquittal to support an inference that they were angry about Shiloh being acquitted and therefore wanted to punish him by falsely testifying against his brother. Mr. Eagle also argues that Shiloh's acquittal could have created a wholly different inference, *i.e.*, that the teenagers had falsely testified against Shiloh, who was innocent, and that they might therefore be likely to do so against his brother, Mr. Eagle, because they might have a bias against the whole family.

The court permitted Mr. Eagle to question the teenagers about any grudge that they harbored because of the alleged sexual assault. He was also able to elicit facts on cross-examination to support his theory that the teenagers testified falsely in his trial to exact revenge against his brother. On cross-examination, Mr. Eagle brought out the nature of the supposed offense, the fact that one of the teenagers was the accuser, and the fact that the other teenager had testified against Shiloh at trial. As Mr. Eagle notes in his brief, one of the teenagers also "acknowledged" during cross-examination that she and the other teenager had "discussed the complaint against Shiloh" the night before.

In excluding the acquittal, the district court stated that counsel had "gone far enough if your purpose is to show a potential for bias." Mr. Eagle argues that evidence of the acquittal would have provided additional support for his argument that the teenagers had a motive to testify against him. But the teenagers had a motive to do so from the supposed crime itself regardless of the outcome of Shiloh's trial: Even if Shiloh had been convicted, the teenagers could still have been upset about the crime

5

or about Shiloh's punishment. Evidence of Shiloh's acquittal would have added very little of substance to Mr. Eagle's attempt to show that his accusers wanted to punish him.

As to any inference that the teenagers committed perjury at Shiloh's trial, Mr. Eagle himself admits on appeal that that is hardly the only inference that the acquittal would support. The jury might have been in a merciful mood or the verdict might have reflected the instructions given to the jury. The truth is that there is simply no way to know why the jury acquitted Shiloh. *See United States v. Beal*, 430 F.3d 950, 955-56 (8th Cir. 2005). We therefore think that the excluded evidence would have made virtually no contribution to determining whether the witnesses perjured themselves at Shiloh's trial.

We agree with Mr. Eagle that the confrontation clause guarantees defendants the right to expose the possible bias of the witnesses against them, but we reject his constitutional claim because we believe that he had an ample opportunity to discredit the witnesses' testimony by cross-examining them regarding the sexual assault charge. *See Delaware v. Fensterer*, 474 U.S. 15, 20-22 (1985) ( per curiam); *United States v. Hall*, 171 F.3d 1133, 1146 (8th Cir. 1999). By allowing Mr. Eagle to explore the topic of Shiloh's crime, the court provided him with "other ways to obtain the effect that the excluded examination would have allegedly established." *United States v. Brown*, 110 F.3d 605, 611 (8th Cir.1997).

We also reject Mr. Eagle's contention that he was entitled to a new trial because the court's ruling violated evidentiary rules: For the reasons given above, we believe that Shiloh's acquittal had little probative value and thus any evidentiary error in the exclusion of this evidence was harmless.

## III.

Mr. Eagle asserts that the district court erred by permitting the government to introduce hearsay statements from two witnesses. Because Mr. Eagle did not object to this evidence in the district court, we review only for plain error. *See United States v. Thompson*, 403 F.3d 533, 537 (8th Cir. 2005).

## A.

Mr. Eagle maintains that the district court erred in admitting hearsay evidence during the government's cross-examination of Joseph Cheauma.

After the collision, the teenagers walked to Mr. Cheauma's home and asked for a ride. At trial, Mr. Eagle called Mr. Cheauma as a witness, and he testified that as he was giving the teenagers a ride they told him that Mr. Eagle had been involved in a car wreck. Mr. Cheauma said that he then searched for Mr. Eagle and found him lying in a ditch. On cross-examination, Mr. Cheauma stated that the teenagers had told him that Mr. Eagle was driving when the accident occurred.

The government contends that the court properly admitted Mr. Cheauma's hearsay testimony that the teenagers said Mr. Eagle was the driver because Mr. Cheauma's testimony that the teenagers said that Mr. Eagle was involved in a car wreck opened the door to the government's inquiry about exactly what the teenagers had said. Of course, if defense counsel had asked Mr. Cheauma about who the teenagers said was driving, then the government certainly could have further inquired into this issue on cross-examination. But counsel made no such inquiry here. The government correctly points out that under our case law the trial court may admit otherwise inadmissible evidence to clarify an issue brought up in direct examination. *See United States v. Beason,* 220 F.3d 964, 968 (8th Cir. 2000). We are highly skeptical, however, about whether Mr. Cheauma's testimony opened the door to the government's inquiry because Mr. Cheauma's statement about what the teenagers said was not offered to prove their views on the car wreck or even that there had been a

collision, but rather to explain Mr. Cheauma's actions leading up to him finding Mr. Eagle.

But even if we were to conclude that the court had plainly erred in admitting the testimony, any error in its admission was harmless. Mr. Eagle cannot establish prejudice here because of the limited value of Mr. Cheauma's statements about what the teenagers told him and the significant amount of evidence tending to show that Mr. Eagle was the driver. Mr. Cheauma's statements provided some small support to the government's contention that Mr. Eagle was the driver, but the government already had considerable evidence that that was so.

## B.

Mr. Eagle contends as well that the court erred in allowing the government to introduce inadmissible hearsay testimony during its direct examination of Officer DeLong. The government questioned the officer about his conversations with the three teenagers at the Fort Yates hospital. Upon being asked whether the teenagers identified the driver and occupants of the vehicle in that conversation, Officer DeLong responded that they did. The government then asked whether the teenagers' stories were consistent and he responded that they were.

We agree with Mr. Eagle that Officer DeLong's testimony carried with it the inference that the teenagers had said that Mr. Eagle was driving his vehicle when the accident occurred. The testimony was therefore hearsay and it was not admissible as a prior consistent statement of the teenagers under Rule 801(d)(1)(B) because there was no claim that the teenagers had recently fabricated their testimony. But we are totally disinclined to give relief on this basis because we don't think that the error was "clear" or "obvious" and because it is not the kind of error that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 734, 737 (1993) *(quoting United States v. Atkinson*, 297 U.S. 157, 160 (1936))*. We detect no plain error here.

8

IV.

Mr. Eagle maintains that the district court committed plain error by admitting evidence of his blood-alcohol concentration, which, he asserts, resulted from an unconstitutional warrantless search. The government argues that Mr. Eagle waived review of this issue because he did not move to suppress this evidence before or during trial. We have not yet decided whether the failure to raise a suppression matter in a timely pretrial motion precludes plain error review. *See United States v. Frazier*, 280 F.3d 835, 845 (8th Cir. 2002), *cert. denied*, 535 U.S. 1107, 536 U.S. 931, 537 U.S. 911 (2002); *see also Thompson*, 403 F.3d at 537 n.4. Assuming without deciding, however, that plain error review is available, we find no merit in Mr. Eagle's claim of error.

As we have said, a plain error must be one that is clear and obvious. But it is far from clear or obvious that there was a constitutional violation in the collection of Mr. Eagle's blood sample. To the contrary, the record contains a great deal of evidence that the search was proper.

Police may conduct a warrantless search by requiring an individual to submit to a blood test where they have probable cause to do so and exigent circumstances exist. *Schmerber v. California*, 384 U.S. 757, 769-71 (1966). Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Exigent circumstances exist when there is a risk of destruction of evidence, including a risk that a defendant's blood-alcohol content will dissipate because "the body functions to eliminate [alcohol] from the system." *Schmerber*, 384 U.S. at 770-71.

The record in this case would clearly support a finding of probable cause. Mr. Grey Day testified that he contacted Prairie Knights Casino security officers to report that Mr. Eagle was driving while intoxicated and that he later advised a police

officer at the scene of the accident that he had seen Mr. Eagle intoxicated earlier. Furthermore, marks on the roadway suggested that the two vehicles had collided in one lane of travel, which is consistent with an accident caused by drunk driving.

The record also contains substantial evidence of exigent circumstances. Nearly two and a half hours passed between the accident and the time when the blood was drawn. Requiring the officer to get a warrant for the evidence would have resulted in a greater delay, allowing for the further dissipation of alcohol in Mr. Eagle's blood and creating a risk that Mr. Eagle would be unavailable for having his blood drawn upon the officer's return.

Since there is a great deal in this record that would support a finding that the warrantless search was valid, we can hardly conclude that it was plain error to admit the evidence that the search turned up.

V.

Finally, Mr. Eagle argues that the district court erred in admitting testimony from Ms. Gates about seeing a vehicle that the government contended belonged to Mr. Eagle. Ms. Gates testified that she observed a vehicle with dealer plates carrying three persons traveling at a high rate of speed toward the place where the collision occurred. Mr. Eagle contends that the district court should have excluded this testimony under Rule 403, which allows the court to exclude evidence that is more unfairly prejudicial than probative. Mr. Eagle maintains that the testimony was speculative because Ms. Gates could not provide a full description of the car and because she saw only three occupants, while Mr. Eagle's vehicle had four people in it.

We conclude that the district court did not abuse its discretion in admitting the evidence, because it was not improperly speculative. *See United States v. Claxton*, 276 F.3d 420, 422-23 (8th Cir. 2002). The jury could conclude from Ms. Gates's testimony that the vehicle that she observed was Mr. Eagle's vehicle. Both the vehicle

10

Ms. Gates saw and Mr. Eagle's vehicle had dealer plates. Ms. Gates's observation of three persons in the vehicle coincided with the testimony of one of the teenagers that she was sleeping in the back seat of the car (and therefore was not visible to onlookers). Ms. Gates's observation, moreover, was consistent with the timing of the collision: She testified that shortly after seeing the vehicle, she heard a loud noise and, a few minutes later, she observed an ambulance traveling in the direction from which the noise had come. The evidence was clearly admissible and it was up to the jurors to give it whatever weight they thought it deserved.

## VI.

For the reasons stated, we affirm the district court's judgment.

_____