# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3888

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jesus Cardenas-Celestino, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 16, 2007
Filed: January 2, 2008

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Jesus Cardenas-Celestino was sentenced to 135 months' imprisonment after his conviction for conspiring to distribute 50 grams or more of methamphetamine. Pursuant to a conditional plea agreement, Cardenas-Celestino appeals the denial of his motion to suppress evidence obtained by the government during a search of his home. We affirm the district court.[1]

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

## I. *Background*

Kansas City, Missouri, police received information that a Hispanic male was selling methamphetamine and cocaine at 122 North Elmwood, a local residence, and detectives began an investigation of that address. At the instruction of law enforcement, an informant purchased both cocaine and methamphetamine there on two occasions from a Hispanic male later identified as Lorenzo Marquez. Relying on these transactions, police obtained a search warrant for the residence.

Officers went to the address to execute the search warrant, but, before executing the warrant, the officers observed four Hispanic males, including Cardenas-Celestino, arrive at the residence in a car. Some of the vehicle's occupants went inside. Then, police detectives saw the target of the investigation, Marquez, exit the residence and get back into the car. The car then drove off.

The detectives immediately followed and summoned uniformed officers to intercept and stop the car. After the stop, the officers identified Cardenas-Celestino as the driver, although he did not have a driver's license. All four passengers were handcuffed and returned to 122 North Elmwood. During the residence search, police detained the car's occupants until they could determine if there was anything illegal in the residence.

During the North Elmwood search, an anonymous informant told police that Cardenas-Celestino was a major drug dealer and that Cardenas-Celestino had drugs at his residence. A police detective asked Cardenas-Celestino if he had any drugs or weapons at his residence, and Cardenas-Celestino responded that he did not. When asked if he would allow a search of his home, Cardenas-Celestino responded "let's go, let's do it." The officers interpreted his response as consent to search. Police then took Cardenas-Celestino to his residence located at 3226 Roberts Street.

-2-

After arriving, the officers again asked Cardenas-Celestino's permission to search his residence. The officers translated an English consent-to-search form into Spanish which Cardenas-Celestino signed. During the search of Cardenas-Celestino's home police recovered $81,840 in cash, 253 grams of methamphetamine, 230 grams of cocaine, 257 grams of marijuana, two loaded firearms, ammunition, and a digital scale. After the search, during an interview with detectives, Cardenas-Celestino admitted possessing the methamphetamine, cocaine, marijuana and cash recovered.

Cardenas-Celestino was charged with four counts including: (1) conspiracy with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; (2) possession with intent to distribute 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); (3) unlawful possession of a firearm by an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2); and (4) criminal forfeiture, in violation of 21 U.S.C. § 853.

Cardenas-Celestino filed a motion to suppress the items seized from his residence arguing two grounds: (1) that his consent for the warrantless search was not voluntary and not freely given but instead was the product of "explicit and implicit threats"; and (2) that he lacked real or apparent authority to consent to a search of the house.

A magistrate judge conducted a suppression hearing to address Cardenas-Celestino's motion. At this hearing, the two detectives involved with the search of Cardenas-Celestino's home testified, as did Cardenas-Celestino. The testimony focused mainly on the circumstances of Cardenas-Celestino's consent to search his home—he testified that his consent was coerced. The traffic stop that preceded the search was mentioned as part of the chronology of events, but was not discussed extensively. One of the police detectives testified that the car Cardenas-Celestino was driving was stopped because the detectives observed their target, Marquez, in the vehicle, and "we wanted to see what possible affiliation they had with our target."

The magistrate issued a report and recommendation to deny Cardenas-Celestino's motion to suppress. The magistrate found that Cardenas-Celestino was capable of giving consent and that he voluntarily consented to the search of his home. The report and recommendation did not analyze or discuss the constitutionality of the initial traffic stop. Cardenas-Celestino filed no objections to this report. On February 17, 2006, the district court adopted the magistrate's report and recommendation and denied the motion to suppress.

Subsequently, Cardenas-Celestino entered a conditional guilty plea for conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. He also agreed to forfeit to the United States $81,840 pursuant to 21 U.S.C. § 853. On October 31, 2006, the district court accepted this plea and sentenced Cardenas-Celestino to 135 months' imprisonment and entered a final order of forfeiture for the $81,840 seized from his home.

## II. *Discussion*

Cardenas-Celestino appeals the denial of his motion to suppress, arguing that the district court committed plain error by refusing to suppress the evidence seized from his residence. Cardenas-Celestino contends that the evidence was the "poisonous fruit" of an illegal traffic stop. Although Cardenas-Celestino filed a motion to suppress in the district court, that motion did not contain the issue of the legality of the initial traffic stop—the motion argued only that Cardenas-Celestino's consent to search was not voluntary and that he did not have authority to consent to the search.

The government, citing to Federal Rule of Criminal Procedure 12(e), first argues that Cardenas-Celestino waived the issue of the validity of the traffic stop, even for plain error review, because he did not raise it in his motion to suppress. But "[w]e have not yet decided whether the failure to raise a suppression matter in a timely pretrial motion precludes plain error review." *United States v. Eagle*, 498 F.3d 885,

892 (8th Cir. 2007) (internal citations omitted). Assuming without deciding, however, that plain error review is available, we find Cardenas-Celestino's claim of error fails.

When reviewing under the plain error standard, we will reverse only if there is (1) error (2) that is plain and (3) that affects the defendant's substantial rights. *United States v. Hance*, 501 F.3d 900, 908 (8th Cir. 2007) (quotations and citation omitted). As we have said, a plain error must be one that is clear and obvious. *United States v. Eagle*, 498 F.3d at 892. It is neither clear nor obvious that the initial traffic stop constituted a constitutional violation.

According to the record, uniformed officers stopped Cardenas-Celestino's car at the direction of detectives who were in pursuit of the vehicle because Marquez, the target of their drug investigation, was known to be inside. Police had obtained a search warrant for Marquez's residence, and they had probable cause to arrest him based upon controlled drug purchases. When probable cause to arrest exists, police are authorized to stop a vehicle containing the subject. *United States v. Sherrill*, 27 F.3d 344, 346–47 (8th Cir. 1994) (affirming denial of a suppression motion because police had probable cause to arrest defendant when they stopped his car); *United States v. Boyd*, 696 F.2d 63, 65–66 (8th Cir. 1982) (affirming denial of a suppression motion because the police had probable cause to arrest defendant). "Probable cause to make a warrantless arrest exists when police officers have trustworthy information that would lead a prudent person to believe that the suspect has committed a crime." *United States v. Sherrill*, 27 F.3d at 347.

In this case, trustworthy information existed that would lead a prudent person to believe Marquez had committed a crime. Marquez had previously sold drugs to a police informant on two occasions. The police informant who purchased drugs from Marquez was searched before and after both sales, and the sales were electronically recorded and monitored to ensure that the informant had actually purchased the drugs from Marquez. When the officers were at 122 Elmwood—the target

residence—before executing the search warrant, they observed Marquez leave the residence and get into the car driven by Cardenas-Celestino. We conclude the record in this case would support a finding of probable cause to arrest Marquez.

After the traffic stop, police discovered that Cardenas-Celestino was driving without a driver's license. At that point, probable cause existed for the officers to arrest Cardenas-Celestino. *United States v. Stephens*, 350 F.3d 778, 780 (8th Cir. 2003). Because probable cause existed to arrest Marquez and stop the vehicle he occupied, which led to probable cause to arrest Cardenas-Celestino for driving without a license, we cannot conclude that it was plain error to admit evidence seized during the search of Cardenas-Celestino's home.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____