# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3453

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Dale Yarrington, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 23, 2010
Filed: March 10, 2011

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury found Dale Yarrington guilty of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The district court[1] sentenced Yarrington to the statutory maximum of 120 months' imprisonment. On appeal, Yarrington makes the following arguments: (1) the district court abused its discretion by excluding the testimony of Lonnel Porter, which he intended to use to impeach a government witness; (2) the district court erred in overruling his motion for judgment of acquittal based on insufficient evidence to support his conviction for possession of

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

child pornography; and (3) the district court erred in applying two sentencing enhancements and in calculating his criminal history category. For the following reasons, we affirm.

## I. *Background*

On May 24, 2007, Yarrington and his mother took Yarrington's computer to Computer Reboot in Waterloo, Iowa, for repair because the computer's operating system would not "boot." William Widmann, a computer technician at Computer Reboot, attempted to repair the computer and determined that he would have to erase all the data and format the hard drive. Before doing so, Widmann spoke with Yarrington and his mother, who both asked Widmann to save any pictures on the hard drive before erasing and formatting it. To access and save the pictures, Widmann connected Yarrington's hard drive to one of Computer Reboot's computers and searched for image files on Yarrington's hard drive. After completing the search, Widmann discovered images that he believed to be child pornography.

Widmann reported his discovery to his employer, John Hayes, the owner of Computer Reboot, who then viewed two "sexually explicit" images of "very young female[s]" that Widmann found on Yarrington's hard drive. After contacting the police, but before the police arrived, Widmann made a copy of the folder containing the images that he found and placed it on the C: drive of Yarrington's hard drive. He testified that he did so in order to make the images more accessible for police, since the operating system would not boot. He testified that he returned Yarrington's hard drive to Yarrington's computer and made no other changes to Yarrington's hard drive. When the police arrived, he informed them that he had copied the folder.

When Officer David McFarland of the Waterloo Police Department arrived at Computer Reboot, Widmann showed Officer McFarland some of the photographs that he found on Yarrington's hard drive. Officer McFarland testified that the images showed children "under the age of ten" wearing no clothing and in "sexual poses."

Officer McFarland seized Yarrington's computer and Computer Reboot's service agreement for that computer. He later called the phone number listed on the service agreement and spoke with a person who identified himself as Yarrington. Officer McFarland told Yarrington that "some illegal stuff" had been found on the computer, but Yarrington denied any knowledge of the material. When Officer McFarland told Yarrington that he had seized his computer, Yarrington yelled, "Those [expletive]. I can't believe it."

The police subsequently obtained a search warrant to search the contents of Yarrington's computer for child pornography. Pursuant to the warrant, Lieutenant Kent Smock of the Black Hawk County Sheriff's Department performed a forensic analysis of the data on the hard drive from the computer. He testified that he analyzed "original images" contained on Yarrington's hard drive—not the copies that Widmann had created. Including only those original images, Lieutenant Smock testified that Yarrington's hard drive contained 1,336 "child notable" images, which portrayed individuals Lieutenant Smock believed to be "under the age of 18 that are either exposing genitalia, engaged in a sex act, or has a sex act being committed around them while they're present." Many of these images were temporary internet files. Approximately 168 images, however, were located in five different subfolders contained in the "My Documents" folder under the hard drive's "Owner" profile.[2] Lieutenant Smock testified that images could not be saved in these subfolders without an "overt act" by the computer's user—that is, the image could not be saved to that location unless the user took steps to manually save it there. At trial, the government introduced 15 printed images from these subfolders. Each exhibit listed the image's

_____

[2]Lieutenant Smock testified that Yarrington's computer contained three profiles, or user accounts. The images in question appeared only in the "Owner" profile, which was not password-protected, meaning that any person with access to the computer could operate it under this profile. Since 2004, Lieutenant Smock has worked for Iowa's Internet Crimes Against Children Task Force and has received training for computer and child exploitation investigations.

location on the hard drive, along with the dates and times that the images were created, modified, and accessed. In the same subfolders that contained the child notable images, Lieutenant Smock found non-pornographic images of Yarrington, Yarrington's family, and Yarrington's personal property. Moreover, Lieutenant Smock testified that the "Favorites" folder on the hard drive contained links to websites that Lieutenant Smock, based on his training and experience, believed to be related to child pornography.

While awaiting trial, Yarrington divulged inculpatory evidence to a fellow detainee, Jordan McConnell, in the Bremer County Jail in Waverly, Iowa. McConnell pleaded guilty to narcotics and weapons charges pursuant to a plea agreement, in which he agreed to provide assistance to the government in other trials. In exchange, the government agreed to seek a lower sentence for McConnell. McConnell testified at Yarrington's trial that he frequently talked to Yarrington and that they had spoken about their respective charges. McConnell testified that Yarrington told him that he had child pornography on his computer and that he had been viewing child pornography "at the time his computer froze." McConnell also testified that Yarrington told jokes about children and stated that he preferred younger children. He also testified that Yarrington told him that Yarrington planned to testify, in his own defense, that "the images were already on his computer before he got it." On cross-examination, McConnell testified that he did not tell his cell mate, Lonnel Porter, that he planned to testify for the government in Yarrington's trial. He also admitted that he had entered into a cooperation agreement with the government for his narcotics and weapons charges. Finally, he stated his distaste for Yarrington's child pornography charge.

In his defense, Yarrington called Porter and David Baron, another inmate at the Bremer County Jail. Porter and Baron both testified that McConnell had a reputation among inmates as a "snitch" and stated that they had never seen McConnell interact with Yarrington. During Porter's direct examination, Yarrington's counsel attempted

to ask Porter about any discussions he had with McConnell about Yarrington's case. When the government objected to the testimony as hearsay, Yarrington's counsel conceded that Porter's testimony would be hearsay but stated, "I think this is fair in terms of impeachment." He explained that Porter would testify that McConnell had told Porter "that [McConnell] wanted to get on [Yarrington's] case, that he was going to basically make up information about him because he didn't like the nature of the charge." The district court concluded that the testimony was hearsay and not admissible under any exception, and it excluded the testimony.

Yarrington testified in his own defense. He acknowledged that he took his computer to Computer Reboot for repairs in May 2007. Yarrington testified that he had never seen the 15 child pornography images introduced at trial. He admitted, however, that he had saved the non-pornographic images contained in the "My Pictures" folder on his hard drive. Yarrington testified that several other individuals lived with him and had access to his computer when he was not home. He testified that another person had been using the computer when it "crashed" and that he was not present at that time. He stated that he took the computer to Computer Reboot because he was unable to get the computer to operate after this crash. Yarrington testified that he had spoken with McConnell in jail on a few occasions, but he denied ever speaking to him about his case.

At the close of all the evidence, Yarrington moved for a judgment of acquittal, which the district court denied. The jury found Yarrington guilty of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). After the jury returned its verdict, Yarrington did not renew his motion for a judgment of acquittal. Yarrington never filed a motion for a new trial.

Prior to sentencing, the presentence investigation report (PSR) calculated a base offense level of 18. The PSR recommended five enhancements: (1) a two-level enhancement, pursuant to U.S.S.G. § 2G2.2(b)(2), for material involving a

prepubescent minor or a minor who had not attained the age of 12; (2) a four-level enhancement, pursuant to § 2G2.2(b)(4), for material that portrays sadistic or masochistic conduct or other depictions of violence; (3) a two-level enhancement, pursuant to § 2G2.2(b)(5), for an offense involving the use of a computer; (4) a three-level enhancement, pursuant to § 2G2.2(b)(7)(B), for possessing at least 150 but fewer than 300 images of child pornography; and (5) a two-level enhancement, pursuant to § 3C1.1, for obstruction of justice. The PSR also determined that Yarrington's criminal history category was V. Yarrington objected to the enhancements recommended pursuant to § 2G2.2(b)(2) and § 2G2.2(b)(4), arguing that the application of both enhancements constituted impermissible double counting. He also objected to the application of the obstruction of justice enhancement. Finally, Yarrington argued that his criminal history category should be only IV.

At the sentencing hearing, the district court overruled Yarrington's objections to the enhancements and to the scoring of his criminal history category. The court determined that Yarrington's total offense level was 31, and his criminal history category was V, yielding an advisory Guidelines range of 168 to 210 months' imprisonment. The court sentenced Yarrington to 120 months' imprisonment, the statutory maximum for his offense.

## II. *Discussion*

Yarrington makes several arguments on appeal: (1) the district court abused its discretion by excluding Porter's testimony, which he intended to use to impeach a government witness, McConnell; (2) the district court erred in overruling his motion for judgment of acquittal based on insufficient evidence to support his conviction for possession of child pornography; and (3) the district court erred in applying two sentencing enhancements and in calculating his criminal history category. We address each argument in turn.

A. *Exclusion of Lonnel Porter's Testimony*

Yarrington first argues that the district court abused its discretion by excluding testimony from Porter that would have impeached the testimony of a government witness, McConnell. Yarrington contends that the trial court erroneously excluded Porter's testimony as hearsay because Yarrington offered it for impeachment only. The failure to permit this impeachment evidence, he argues, violated his Sixth Amendment right to confront and cross-examine a witness against him and to call witnesses to testify in his favor.

"'We review the evidentiary rulings of a district court only for abuses of discretion, and will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict.'" *United States v. Elbert*, 561 F.3d 771, 775 (8th Cir. 2009) (quoting *United States v. Ballew*, 40 F.3d 936, 941 (8th Cir. 1994)). "We will not reverse if the error was harmless." *United States v. Missouri*, 535 F.3d 844, 848 (8th Cir. 2008) (citing Fed. R. Civ. P. 61.). "[E]rror may not be predicated upon a ruling excluding evidence unless a substantial right of the party is affected and 'the substance of the evidence was made known to the court by offer' or was apparent from the context of the questions." *Lee v. Rapid City Area Sch. Dist. No. 51-4*, 981 F.2d 316, 321 (8th Cir. 1992) (quoting Fed. R. Evid. 103(a)(2)).

The government urges us to review only for plain error because Yarrington failed to preserve the issue by not offering specific grounds at trial for admitting Porter's testimony. Although the government acknowledges that Yarrington argued, to the district court, that Porter's testimony was "fair in terms of impeachment," the government asserts that Yarrington needed to specify that he sought to introduce the testimony under Federal Rule of Evidence 613(b) as evidence of a prior inconsistent statement made by McConnell.

If Yarrington had failed to preserve this evidentiary issue for appellate review, the government would be correct that our review would be limited to plain error. *Elbert*, 561 F.3d at 775. However, different standards apply to preserve alleged error for trial court decisions to admit evidence versus its decisions to exclude evidence. To preserve an argument that evidence was improperly *admitted*, the party must have made specific objections before the district court. *United States v. Johnson*, 450 F.3d 366, 371 n.2 (8th Cir. 2006); *see also* Fed. R. Evid. 103(a)(1) (requiring the objecting party to state "the specific ground of objection"). To preserve an argument that evidence was improperly *excluded*, the party must have made a sufficient offer of proof. *See* Fed. R. Evid. 103(a)(2). "'The purpose of an offer of proof is to inform the court and opposing counsel of the substance of the excluded evidence and to provide the appellate court with a record sufficient to allow it to determine if the exclusion was erroneous.'" *Elbert*, 561 F.3d at 775 (quoting *Ulmer v. Associated Dry Goods Corp.*, 823 F.2d 1278, 1283 n.2 (8th Cir. 1987)). Here, after the government objected to Porter's testimony, Yarrington described Porter's proposed testimony to the district court and the government and explained that the testimony would be used to impeach McConnell. Thus, we are satisfied that Yarrington preserved the issue of Porter's excluded testimony for appeal.

The district court excluded Porter's testimony as inadmissible hearsay. Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." But when a party offers an out-of-court statement made by a government witness in order to impeach that witness by showing that he had made statements contrary to his trial testimony—and not to establish the truth of his out-of-court statement—the out-of-court statement is not hearsay. *United States v. Eagle*, 498 F.3d 885, 888 (8th Cir. 2007). In such cases, Federal Rule of Evidence 613(b) provides that "[e]xtrinsic evidence of a prior inconsistent statement . . . is not admissible unless the witness is afforded an opportunity to explain or deny [the prior statement] and the opposite party is afforded an opportunity to interrogate the witness

[about the statement] . . . ." *See also United States v. Schnapp*, 322 F.3d 564, 571 (8th Cir. 2003).

The government asserts that Porter's testimony was not admissible as impeachment evidence under Rule 613(b) because Yarrington failed to lay a proper foundation for the evidence. On cross-examination, Yarrington's counsel questioned McConnell about whether he had ever talked to Porter about providing assistance to the government in its prosecution of Yarrington:

> Q. Did you ever talk to him [Porter] about what you were going to do to try to get your sentence reduced?
>
> A. No.
>
> Q. Never? Never made a comment or word to him about that?
>
> A. He didn't know I had a cooperation plea, no.
>
> Q. Okay.
>
> A. That's not something you tell people.

Later, Yarrington's counsel called Porter as a defense witness. Porter testified that he had, in fact, discussed Yarrington's case with McConnell. Yarrington's counsel sought to elicit testimony about what McConnell had told Porter, but the government objected that the testimony would call for hearsay. Although Yarrington's counsel stated that he "believe[d] it is hearsay," he also stated that he thought the testimony was "fair in terms of impeachment." At a sidebar, Yarrington's counsel stated that Porter would testify that McConnell had told Porter "that he [McConnell] wanted to get on his [Yarrington's] case, that he was going to basically make up information about him because he didn't like the nature of the charge." Thus, Porter's testimony about McConnell's prior statements was clearly inconsistent with McConnell's trial

testimony that he had never talked to Porter about cooperating in Yarrington's case. Likewise, to some extent, McConnell was afforded an opportunity to explain or deny the prior statements. McConnell denied making *any* statements to Porter about cooperating in Yarrington's case. Accordingly, Porter's testimony should have been permitted as extrinsic evidence of a prior inconsistent statement in order to impeach McConnell.

Notwithstanding, even if the district court erred in excluding Porter's testimony, the error was harmless. As explained below, the government introduced substantial evidence of Yarrington's guilt at trial. Further, because McConnell's prior inconsistent statements could not have been admitted for their truth (i.e., to show that McConnell did, in fact, fabricate his trial testimony), they would have had limited probative value. McConnell's prior inconsistent statements would have merely discredited his trial testimony that he had not discussed, with Porter, his plans to cooperate with the government in Yarrington's case. In addition, Yarrington had already elicited testimony from McConnell on cross-examination, calling his credibility into question by discussing his plea agreement, his reasons for cooperating with the government, and his negative feelings about Yarrington's crime. Yarrington further impeached McConnell by introducing testimony from Porter and Baron to show that McConnell had a reputation as a "snitch" and that they had never seen McConnell interact with Yarrington while in jail. For these reasons, we are convinced that the district court's exclusion of Porter's testimony did not impact Yarrington's substantial rights or have more than a slight influence on the jury's verdict. *See United States v. Bordeaux*, 570 F.3d 1041, 1052 (8th Cir. 2009) (finding that any error in excluding Rule 613(b) evidence was harmless where government witness's testimony was duplicative of other testimony and defendant impeached witness's credibility through other means); *Eagle*, 498 F.3d at 888–89 (finding that any error in excluding Rule 613(b) evidence was harmless where the evidence of the defendant's guilt was strong and the excluded prior statements would have had limited probative value).

Finally, we reject Yarrington's claim that the district court's exclusion of Porter's testimony violated his Sixth Amendment right to confront and cross-examine a witness against him and to call witnesses in his favor. Yarrington has failed to show that the district court's error rose to the level of a constitutional violation. Even assuming without deciding that Yarrington could show a Sixth Amendment violation, he will not be entitled to relief "if these errors were 'so unimportant and insignificant that they may . . . be deemed harmless.'" *United States v. Turning Bear*, 357 F.3d 730, 741 (8th Cir. 2004) (quoting *Chapman v. California*, 386 U.S. 18, 22 (1967)). "Before we can determine that an error is harmless, we must be able to declare a belief that it was harmless beyond a reasonable doubt." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010) (quotations and citations omitted). Here, Yarrington subjected McConnell to a thorough cross-examination, revealing that McConnell had, in fact, received some consideration in exchange for cooperating with the government in Yarrington's case. McConnell also admitted his own distaste for Yarrington's offense. Likewise, Yarrington called Porter and Baron as witnesses to impeach McConnell's testimony that he had interacted with Yarrington while in jail. Thus, we conclude beyond a reasonable doubt that the district court's error excluding Porter's testimony did not contribute to the jury's guilty verdict.

## B. *Sufficiency of the Evidence*

Yarrington next argues that the district court erred in denying his motion for a judgment of acquittal. He maintains that the government failed to provide sufficient evidence to prove that he knowingly possessed child pornography. First, he asserts that Widmann tampered with the images on his hard drive before the police examined it, rendering that evidence "highly suspect, if not fatally flawed." Second, he contends that McConnell's testimony was the only evidence the government presented to show that Yarrington had knowledge of the child pornography on his computer. Given McConnell's status as an impeached jailhouse informant, Yarrington contends that McConnell's suspect testimony alone could not support Yarrington's conviction.

-11-

"'We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" *United States v. Scofield*, 433 F.3d 580, 584–85 (8th Cir. 2006) (quoting *United States v. Hamilton*, 332 F.3d 1144, 1148–49 (8th Cir. 2003)). "'[I]f there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt,' then '[w]e must uphold the verdict.'" *United States v. McCloud*, 590 F.3d 560, 565–66 (8th Cir. 2009) (quoting *United States v. Wainright*, 351 F.3d 816, 822 (8th Cir. 2003)).

Yarrington was convicted of violating 18 U.S.C. § 2252A(a)(5)(B), which makes it a crime to "knowingly possess[], or knowingly access[] with intent to view, any . . . computer disk, or any other material that contains an image of child pornography" that has been transported in interstate commerce or produced using materials that have been transported in interstate commerce "by any means, including by computer." Yarrington asserts that no reasonable jury could have found beyond a reasonable doubt that he knowingly possessed images of child pornography.

Yarrington's challenges to the evidence are unconvincing and consequently unavailing. The evidence does not show that Widmann tampered with Yarrington's hard drive. Widmann testified that he merely copied the folder containing the images of child pornography to another location on Yarrington's hard drive and made no other changes to it. Similarly, Lieutenant Smock testified that he only analyzed the images he found in their original location on the hard drive—not the images contained in the copied folder created by Widmann. Yarrington produced no other evidence of tampering. At most, his argument amounts to a claim that Widmann and Lieutenant Smock were not credible witnesses. Because "'[t]he jury is the final arbiter of the witnesses' credibility,'" however, "attacks on their credibility are no basis to overturn the verdict." *United States v. Wilder*, 597 F.3d 936, 944 (8th Cir. 2010) (quoting *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004)). For similar reasons,

-12-

Yarrington's attack on McConnell's testimony provides no basis for overturning the jury's verdict. As noted above, the jury heard several attacks on McConnell's testimony, including McConnell's own testimony about his plea agreement with the government and Porter's and Baron's testimony that McConnell had a reputation as a "snitch."

In any case, the government presented sufficient evidence to show that Yarrington knowingly possessed child pornography. The government's evidence showed that Yarrington's hard drive contained 168 images of child pornography, saved in five separate locations. Some of these locations also contained non-pornographic images of Yarrington, his family, and his property. Thus, a reasonable jury could have concluded that these images were not merely inadvertently saved to Yarrington's hard drive by Yarrington or purposely by another user. *Cf. United States v. Kain*, 589 F.3d 945, 949–50 (8th Cir. 2009) (discussing the issue, to be resolved by the fact finder, of whether images stored in an inaccessible folder on a hard drive were inadvertently placed there by a Trojan virus). Likewise, the government presented evidence of "favorites" folders on the hard drive, which contained websites related to child pornography. *See id.* at 950 (noting that "[a] computer user who intentionally accesses child pornography images on a web site gains actual control over the images"). Viewing all the evidence in a light most favorable to the verdict, we conclude that the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Yarrington knowingly possessed child pornography.

We need not address Yarrington's argument that, at the very least, he is entitled to a new trial. Yarrington did not file a motion for a new trial with the district court. In such cases, we may only review the district court's failure to grant a new trial for plain error. *United States v. Martinson*, 419 F.3d 749, 752 (8th Cir. 2005). The district court could not have committed error, plain or otherwise, because it "does not have

-13-

the power under [Federal Rule of Criminal Procedure 33] to order a new trial sua sponte." *Id.*

## C. *Sentencing Issues*

Finally, Yarrington argues that the district court erred in applying several sentencing enhancements and in calculating his criminal history category. First, he contends that applying a two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(2) for material involving a prepubescent minor who had not attained the age of 12 and a four-level enhancement pursuant to § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other depictions of violence constitutes double counting. Second, he maintains that the government failed to meet its burden of proof to warrant a two-level enhancement for obstruction of justice, pursuant to § 3C1.1, because the enhancement was only based on the disparity between his and McConnell's testimony. Third, he asserts that the district court erred in adding one criminal history point based on a conviction in Emmet County, Iowa, where he was found guilty without being present or represented by counsel.

"We review the sentence imposed by the district court under a deferential abuse of discretion standard." *United States v. Linderman*, 587 F.3d 896, 899 (8th Cir. 2009). We first consider whether the district court committed any "significant procedural error," such as an improper calculation of the applicable Guidelines range. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). In turn, when reviewing the district court's calculation of the Guidelines range, "[w]e review interpretation of the Sentencing Guidelines de novo and a district court's application of the Guidelines to the facts for clear error." *United States v. Rutherford*, 599 F.3d 817, 820 (8th Cir. 2010). "In the absence of procedural error below, we 'should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Feemster*, 572 F.3d at 461 (quoting *Gall*, 552 U.S. at 51). Yarrington asserts only that

the district court committed procedural error; he does not challenge the substantive reasonableness of his sentence. We review each of his arguments in turn.

1. *Section 2G2.2(b)(2) and Section 2G2.2(b)(4) Enhancement*s

Yarrington argues that applying enhancements under both § 2G2.2(b)(2) and § 2G2.2(b)(4) amounted to impermissible double counting.

> Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines. Even if the court finds double-counting, it is permissible where (1) the Sentencing Commission intended the result and (2) each statutory section concerns conceptually separate notions related to sentencing.

*United States v. Myers*, 598 F.3d 474, 476 (8th Cir. 2010) (quotations, alteration, and citations omitted).

The district court committed no procedural error in applying the enhancements under both § 2G2.2(b)(2) and § 2G2.2(b)(4). Section 2G2.2(b)(2) provides for a two-level enhancement "[i]f the material involved a prepubescent minor or a minor who had not attained the age of 12 years." This enhancement focuses on the harm to the victim based on that victim's age. In contrast, § 2G2.2(b)(4) provides for a four-level enhancement "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." This enhancement focuses on the harm to the victim based on the type of conduct involved, which may be particularly violent in character regardless of age. Because § 2G2.2(b)(2) and § 2G2.2(b)(4) do not address the same type of harm, the district court's application of both enhancements did not constitute double counting.

## 2. *Obstruction of Justice Enhancement*

Yarrington argues that the district court erred in applying an obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1 because the PSR based the enhancement solely on the disparity between his testimony and McConnell's "inherently untrustworthy" testimony. "We give great deference to a district court's decision to impose an obstruction of justice enhancement, reversing only when the district court's findings are insufficient." *United States v. Cunningham*, 593 F.3d 726, 730 (8th Cir. 2010). "The district court must find the predicate facts supporting an enhancement for obstruction of justice by a preponderance of the evidence, and we review those findings for clear error." *United States v. Montes-Medina*, 570 F.3d 1052, 1061 (8th Cir. 2009).

Under the Guidelines, a defendant can obstruct justice by "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, cmt. n.4(b). The district court cannot impose the enhancement "simply because a defendant testifies on his own behalf and the jury disbelieves him." *United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2004) (quotation and citation omitted). Instead, "the sentencing court must itself conduct an independent evaluation and determine whether the defendant committed perjury." *Id.* To conclude that the defendant committed perjury, the court must find, by a preponderance of the evidence, that "the defendant gave 'false testimony concerning a material matter with the wilful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Mashek*, 606 F.3d 922, 933 (8th Cir. 2010) (quoting *United States v. Kessler*, 321 F.3d 699, 703 (8th Cir. 2003)).

The district court committed no procedural error in applying an enhancement for obstruction of justice. At trial, Yarrington testified that he had never seen any of the images of child pornography found on his hard drive and admitted at trial. At the sentencing hearing, the district court independently found that Yarrington "testified falsely concerning a material matter for the purpose of attempting to avoid being

-16-

convicted." In doing so, the court explicitly noted that it did not consider McConnell's testimony in reaching this conclusion. Indeed, as the government argued, the location of the images of child pornography on Yarrington's hard drive, the proximity of those images to Yarrington's personal photos, and the links to child pornography websites in Yarrington's "Favorites" folder all contradict Yarrington's testimony that he had never seen the images of child pornography. Given the record, the district court's choice not to explicitly cite this evidence does not render its obstruction finding clearly erroneous. *See Kessler*, 321 F.3d at 703 (affirming the enhancement where the district court stated "I heard the trial testimony, and I think [it constitutes] obstruction of justice"); *United States v. Brown*, 311 F.3d 886, 890 (8th Cir. 2002) (affirming the enhancement where neither party introduced evidence on the issue and the district court stated "I believe the defendant did testify untruthfully"). Accordingly, we conclude that the district court committed no procedural error in applying this enhancement.

### 3. *Criminal History Calculation*

Finally, Yarrington argues that the district court erred in adding one criminal history point based on his 1999 conviction for criminal mischief in Emmet County, Iowa, where he was not present or represented by counsel. He argues that this conviction cannot count toward his criminal history category because the prior conviction violated his constitutional rights under the Fifth and Sixth Amendments. He acknowledges, however, that his argument contradicts the Supreme Court's majority opinion in *Nichols v. United States*, 511 U.S. 738 (1994). In *Nichols*, the Supreme Court held that a prior misdemeanor conviction without the presence of counsel may be counted toward a defendant's criminal history under the Sentencing Guidelines where the conviction did not result in a sentence of imprisonment. *Id.* at 748–49. Nonetheless, Yarrington urges this court to find that the dissenting opinion in *Nichols* "correctly interprets the law." *See id.* at 762–63 (Blackmun, J., dissenting). Neither the district court nor this court may overrule Supreme Court precedent. *See United States v. Barnett*, 574 F.3d 600, 602 (8th Cir. 2009). Because Yarrington's

1999 Emmet County conviction resulted in a $50 fine with no sentence of imprisonment, the district court committed no procedural error by including it when determining Yarrington's criminal history category.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____