# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1153
_____

United States of America

*Plaintiff - Appellee*

v.

Rafael Puebla-Zamora

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Bismarck
_____

Submitted: February 19, 2021
Filed: May 3, 2021
_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

A jury convicted Rafael Puebla-Zamora of reentry of a deported alien in violation of 8 U.S.C. § 1326(a). He appeals the district court's[1] denial of his pretrial motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Peter D. Welte, United States District Judge for the District of North Dakota, adopting the report and recommendation of the Honorable Alice R. Senechal, United States Magistrate Judge for the District of North Dakota.

## I.

On August 30, 2018, Officer Jacob Bratsch, a Bismarck police officer, received a text message from a confidential information ("the CI") reporting a possible burglary at the apartment of a known drug dealer. Officer Bratsch shared this information with his patrol partner, Officer Joseph Olsen. Viewing this as credible, the officers went to the apartment (#308) and knocked on the door; no one answered. Officer Bratsch texted the CI to confirm the apartment number. The CI responded that "if the people weren't in 308 . . . they'd be in 111." Based on that information, the officers knocked on the door of Apartment 111. Although in uniform and displaying badges, they did not announce themselves as police.

Puebla-Zamora answered the door. To avoid alerting him to the robbery, the officers asked about a noise complaint. He responded he had heard nothing. The officers then asked his name and date of birth; he provided them. Per routine procedure, the officers contacted dispatch to check warrants and driver's license records. Dispatch found no records with the name and date of birth provided, so the officers asked for identification. He provided a Mexican passport. Because the officers could not verify his identity from it, they called Border Patrol. Throughout the encounter, the officers remained outside the apartment in the hallway of the building; Puebla-Zamora stood in the doorway.

Supervisory Border Patrol Agent Tanner Branham ran a records check, finding that Puebla-Zamora had previously been removed from the United States. Agent Branham asked Puebla-Zamora to identify his country of citizenship and any documents allowing him to be legally present in the United States. Puebla-Zamora responded that he was a Mexican citizen with a Nevada driver's license but no documents allowing him to be legally present in the United States.

Agent Branham told the officers that Puebla-Zamora was illegally present in the United States and requested they detain him until a Border Patrol agent could

-2-

take him into custody. Meanwhile, the officers sought his consent to search the apartment.

As requested, the officers took Puebla-Zamora into custody until a Border Patrol agent arrived. Once in custody of Border Patrol, Puebla-Zamora was fingerprinted. Puebla-Zamora was later charged with reentry of a deported alien, in violation of 8 U.S.C. § 1326(a).

Puebla-Zamora filed a motion to suppress, alleging the officers violated his Fourth Amendment rights because the initial encounter was not consensual, and the officers lacked reasonable suspicion to approach his apartment.

Following an evidentiary hearing, a magistrate judge found the encounter consensual and "the officers had reasonable suspicion to initiate their contact with Puebla-Zamora because they were actively investigating a possible burglary." Adopting the magistrate judge's report and recommendation, the district court denied the motion. A jury convicted Puebla-Zamora. He appeals the denial of the motion to suppress.

II.

Puebla-Zamora challenges the district court's denial of his motion to suppress. Generally, the denial of a motion to suppress "preserves the objection for appeal." *United States v. Comstock*, 531 F.3d 667, 675 (8th Cir. 2008). However, the government argues Puebla-Zamora waived this argument by stating "no objection" to the admission of evidence at trial. *See id.* (holding that pretrial objections can be "waived when an appellant's counsel *affirmatively stated* 'no objection' at trial to the admission of evidence previously sought to be suppressed"). *But see United States v. Petruk*, 929 F.3d 952, 958 (8th Cir. 2019) (declining to enforce a waiver because it was not "conscious and intentional"). This court need not decide the waiver issue because Puebla-Zamora's challenges are without merit.

-3-

A.

For the first time on appeal, Puebla-Zamora argues the police officers violated his Fourth Amendment rights by detaining him at the request of Border Patrol. Because this issue is raised for the first time on appeal, this court reviews for plain error. *See United States v. Cardenas–Celestino*, 510 F.3d 830, 833 (8th Cir. 2008) (noting that "[w]e have not yet decided whether the failure to raise a suppression matter in a timely pretrial motion precludes plain error review"). Under plain error review, this court reveres only if there is "(1) error, (2) that is plain, and (3) that affects substantial rights" and "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631 (2002). The error "must be one that is clear and obvious." *Cardenas–Celestino*, 510 F.3d at 833.

No "agreement" is required for state and local law enforcement to communicate "or otherwise to cooperate" with federal authorities "regarding the immigration status of any individual." **8 U.S.C. § 1357(g)(10)**. *See also* **8 U.S.C. § 1373(c)** (requiring federal immigration authorities to respond to state and local inquiries "seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law"). In fact, "[c]onsultation between federal and state officials is an important feature of the immigration system." *Arizona v. United States*, 567 U.S. 387, 411 (2012).

The cooperation between the police officers and Border Patrol to detain Puebla-Zamora was within the authority conferred by Congress. *See* **8 U.S.C. § 1357(g)(10)** (noting that no agreement is necessary for federal and state authorities to cooperate in identifying, apprehending, detaining, or removing "aliens not lawfully present in the United States"). Here, police officers reasonably contacted Border Patrol to identify an individual with foreign identification. *See United States v. Quintana*, 623 F.3d 1237, 1241 (8th Cir. 2010) (noting that a state trooper "reasonably contacted Border Patrol" to determine the validity of a foreign identification document). And Border Patrol reasonably questioned Puebla-Zamora

about his legal presence in the United States. *See* **8 U.S.C. § 1357(a)(1)** (authorizing immigration officers "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States").

Border Patrol also had authority to take Puebla-Zamora into custody because there was probable cause that he was illegally present in the United States and likely to escape before a warrant issued. *See* **8 U.S.C. § 1357(a)(2)** (authorizing warrantless arrest by Border Patrol agent if the agent "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest"); *Quintana*, 623 F.3d at 1239 ("Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in §1357(a)(2) means constitutionally required probable cause."). In addition to presenting a Mexican passport as his only identification, he admitted that he "didn't have any documents that would allow him to be in the United States legally." And his previous removal for illegal entry established probable cause that he may escape before a warrant could issue.

Police officers detained Puebla-Zamora at the express request of Border Patrol, and probable cause supported Border Patrol's request. It is neither clear nor obvious that officers violated Puebla-Zamora's Fourth Amendment rights by detaining him. *See United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) ("Here, Trooper Pulver's acts—identifying Ovando-Garzo, communicating with the Border Patrol, and detaining Ovando-Garzo until the Border Patrol agent could take custody—were not unilateral and, thus, did not exceed the scope of his authority."); *Quintana*, 623 F.3d at 1239 (holding a state trooper was authorized to assist a federal agent in detaining someone suspected of being unlawfully present in the United States); *United States v. Villa-Velazquez*, 282 F.3d 553, 555 (8th Cir. 2002) ("Federal immigration law authorizes state and local officials to arrest and detain illegal aliens to the extent permitted by the relevant state laws, once the status of the alien has been confirmed by the INS.").

B.

Puebla-Zamora asserts a *Brady* violation because Officer Bratsch was unable to retrieve and turn over the CI text messages that led him to Puebla-Zamora's apartment. *See **Brady v. Maryland***, 373 U.S. 83 (1963). This court has not determined whether *Brady* applies to a suppression hearing, and circuits are split on the issue. *See, e.g.*, ***United States v. Thomas***, 835 F.3d 730, 734 (7th Cir. 2016) (discussing circuit split). Assuming without deciding that it applies, there is no merit to his argument.

"To show a *Brady* violation, the defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." ***United States v. Beckman***, 787 F.3d 466, 492 (8th Cir. 2015). Puebla-Zamora cannot meet any of these requirements.

As to elements one and two, Puebla-Zamora fails to explain how text messages from a CI to a police officer about a potential burglary are either favorable to him or material to his charged offense that requires showing he was a previously deported alien who was knowingly and voluntarily in the United States. As Officer Bratsch testified and Officer Olsen confirmed, the CI's text messages alerted them to an in-progress burglary. The officers testified about the text messages to explain why they were in Puebla-Zamora's apartment building and approached his apartment. He did not challenge these factual findings.

Puebla-Zamora theorizes that the text messages from the CI "could have" contained possible impeachment information. However, "[s]uch conjecture does not meet the *Brady* materiality requirement." ***Id.*** at 493. This is particularly true here, where Officer Olsen corroborated Officer Bratsch's testimony about the messages, the magistrate judge determined the officers' testimony was credible, and Puebla-Zamora did not challenge the credibility assessment. *See **United States v. Ford***, 888 F.3d 922, 927 (8th Cir. 2018) ("The trial court has a distinct advantage in evaluating

witness credibility, and its credibility determinations are virtually unreviewable on appeal." (internal quotation marks omitted)).

As to element three, Puebla-Zamora cannot show the United States suppressed evidence. As the district court found, "there is no evidence of intentional deletion of the text messages." The district court credited Officer Bratsch's explanation for why, despite a good faith effort to retrieve the messages, he was unable to do so. And, months before the suppression hearing, the United States disclosed that Officer Bratsch had unsuccessfully attempted to retrieve the messages.

Puebla-Zamora relies on two out-of-circuit cases, *United States v. Vaughn*, 2015 WL 6948577 (D.N.J. Nov. 10, 2015) and *State v. Williamson*, 2015 WL 4429238 (Ariz. Ct. App. July 20, 2015). Both are distinguishable. *Vaughn* involved the intentional deletion of text messages that were relevant to the charged offense. *Vaughn*, 2015 WL 6948577, at *17. *Williamson* involved a jury instruction available under Arizona law. *Williamson*, 2015 WL 4429238, at *7.

Puebla-Zamora cannot meet the elements of a *Brady* claim.

* * * * * * *

The judgment is affirmed.

_____