# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3797

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *
      v.                           *
                                   *
Jesus Fabel Diaz-Pellegaud, also known *
as Fael, also known as Fabel,      *
                                   *
            Appellant.             *

_____                        Appeals from the United States
                                   District Court for the
No. 10-3828                        District of South Dakota.

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *
      v.                           *
                                   *
Jose Garcia, also known as Maya, also *
known as Moya,                     *
                                   *
            Appellant.             *

_____

No. 10-3830

_____

United States of America,                    *
                                              *
             Appellee,                        *
                                              *
      v.                                      *
                                              *
Jose Enrique Burgos-Valdez, also              *
known as Jose Enrique Burgos, also            *
known as Feriche, also known as               *
Feruchi, also known as Arturo,                *
                                              *
             Appellant.                       *

_____

No. 11-1002

_____

United States of America,                    *
                                              *
             Appellee,                        *
                                              *
      v.                                      *
                                              *
Benjamin Melendez-Rocha, also known *
as Roberto Barron, also known as              *
Enano, also known as Nano, also               *
known as Seta,                                *
                                              *
             Appellant.                       *

-2-

_____

Submitted: October 20, 2011
Filed: January 25, 2012
_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Jesus Fabel Diaz-Pellegaud, Jose Garcia, Jose Enrique Burgos-Valdez, and Benjamin Melendez-Rocha appeal their convictions and sentences on various grounds. For the reasons set out below, we affirm the convictions and sentences imposed by the district court.[1]

## I.    BACKGROUND

This case stems from a multi-year investigation into an interstate and international drug smuggling and distribution organization. The Government asserted at trial that Diaz-Pellegaud arranged for the smuggling of methamphetamine and marijuana from Mexico to the United States and supervised the distribution of these drugs in locales including Phoenix, Arizona, and Sioux Falls, South Dakota. Garcia provided "muscle" for the organization and traveled north from Mexico as part of a team of enforcers to assist drug dealers in Sioux Falls with debt collection efforts. Burgos-Valdez was involved in the transportation and smuggling of drugs for the organization. Melendez-Rocha was involved in methamphetamine and marijuana distribution in Phoenix and elsewhere and helped launder money for the organization as well.

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

The investigation began with a traffic stop in New Mexico on July 12, 2007, during which Burgos-Valdez and two others were found to be transporting more than three kilograms of methamphetamine and a loaded .45 caliber handgun in their car while driving from Phoenix to Sioux Falls. Documents seized during this stop led police to investigate a house at 512 North Menlo Avenue in Sioux Falls. On April 1, 2008, acting pursuant to a search warrant, police searched the Menlo Avenue house, seizing over a kilogram of methamphetamine, cash, and a significant amount of paperwork related to drug distribution, including ledgers and "owe sheets." Shortly thereafter, police arrested the owner of the Menlo Avenue house, Dario Verdugo-Galaviz, one of the key players in the organization's distribution operation in both Phoenix and Sioux Falls.

On February 20, 2009, police simultaneously executed a number of search warrants on houses with ties to the organization, including one belonging to Fidel "Pelon" Villaneuva-Godinez, an important figure in the Sioux Falls distribution operation. At Pelon's house, officers found cash and almost half a kilogram of methamphetamine. Information gleaned from the searches also enabled the subsequent interception of a drug shipment bound for Sioux Falls containing over a kilogram of methamphetamine and approximately fifty pounds of marijuana. On July 1, 2009, Diaz-Pellegaud was arrested in Idaho in a pickup truck containing approximately 160 pounds of marijuana.

A grand jury indicted twenty-seven individuals in connection with this investigation. Twenty-one pled guilty, and a majority of these cooperated with the authorities. The remaining six—Michelle Munoz, who was with Burgos-Valdez when he was arrested, Manuel Ramirez, who was with Diaz-Pellegaud when he was arrested, and the four appellants—pled not guilty and proceeded to trial. After an eight day trial, the jury acquitted Munoz and convicted all four appellants and Ramirez of conspiracy to distribute 500 grams or more of a substance containing

methamphetamine; Diaz-Pellegaud, Garcia, and Ramirez of conspiracy to distribute 100 kilograms or more of a substance containing marijuana; and Diaz-Pellegaud and Melendez-Rocha of conspiracy to launder money. The district court sentenced Diaz-Pellegaud to 360 months' imprisonment, Garcia to 151 months' imprisonment, Burgos-Valdez to 240 months' imprisonment, and Melendez-Rocha to 348 months' imprisonment.[2] All four timely appeal.

## II.  DISCUSSION

On appeal, Diaz-Pellegaud argues that the evidence introduced at trial was insufficient to support his convictions for conspiracy to commit money laundering and for conspiracy to distribute methamphetamine and marijuana. Garcia similarly challenges the sufficiency of the evidence for his convictions for conspiracy to distribute methamphetamine and marijuana and also contends that the district court abused its discretion by failing to adjust his sentencing guidelines offense level downward on the basis of minor or minimal participant status. He further argues that his sentence is substantively unreasonable. Burgos-Valdez challenges the sufficiency of the evidence for his conviction of conspiracy to distribute methamphetamine and claims that his sentence is substantively unreasonable. Melendez-Rocha contends that the district court erred in denying his motion for a new trial on the basis of statements by a co-defendant's attorney that allegedly violated a pretrial order, and he argues that his sentence is substantively unreasonable.

### A. Diaz-Pellegaud

#### 1. Evidentiary Sufficiency: Money Laundering

We consider challenges to the sufficiency of the evidence to support a conviction *de novo* but consider the evidence presented "in the light most favorable

_____

[2]Ramirez was sentenced to 162 months' imprisonment and did not appeal his convictions or sentence.

to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Yarrington*, 634 F.3d 440, 449 (8th Cir. 2011) (quoting *United States v. Scofield*, 433 F.3d 580, 584-85 (8th Cir. 2006)).  Reversal for evidentiary insufficiency is only warranted when, based on the evidence before it, "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Espinosa*, 585 F.3d 418, 423 (8th Cir. 2009) (quoting *United States v. Thompson*, 533 F.3d 964, 970 (8th Cir. 2008)).

Diaz-Pellegaud was convicted at trial of conspiring to launder money in violation of 18 U.S.C. § 1956(h).  "Conspiring to launder money . . . requires that the defendant 'agreed with another person to violate the substantive provisions of the money-laundering statute.'" *United States v. Heid*, 651 F.3d 850, 854 (8th Cir. 2011) (quoting *United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006)).  The substantive money laundering provision that Diaz-Pellegaud was convicted of having conspired to violate has four elements:  (1) that the defendant conducted or attempted to conduct a financial transaction that affected interstate or foreign commerce; (2) that the financial transaction involved property representing the proceeds of illegal activity; (3) that the defendant knew that the property represented the proceeds of illegal activity; and (4) that the defendant conducted the financial transaction knowing that the transaction was intended to promote the carrying on of illegal activity.  18 U.S.C. § 1956(a)(1)(A)(i); *see United States v. Slagg*, 651 F.3d 832, 844 (8th Cir. 2011).  Bank account deposits count as financial transactions for the purposes of the money laundering statute.  18 U.S.C. § 1956(c)(3).  For example, in *United States v. Johnson*, 619 F.3d 910 (8th Cir. 2010), we upheld a promotion-of-illegal-activity money laundering conviction based on the defendant's deposits of the proceeds of methamphetamine sales into a bank account controlled by a co-conspirator.  *Id.* at 919-20.

Diaz-Pellegaud argues that the Government did not introduce any evidence connecting him to any financial transactions and that all the Government showed was that he read "a series of numbers which correlated to Wells Fargo bank accounts" over the phone to a co-conspirator, Dario Verdugo-Galaviz. He also argues that there is little to corroborate the trial testimony of Verdugo-Galaviz.

Verdugo-Galaviz testified that both he and a fellow drug dealer named Carlos Clemente "Camargo" Perez-Pantaleon had deposited money from their Sioux Falls drug distribution operation into bank accounts designated by Diaz-Pellegaud in order to pay him for drugs. As the payments continued, drugs continued to arrive in Sioux Falls. Evidence from other cooperating witnesses established that money from the accounts was later withdrawn in Phoenix. The jury was entitled to credit such testimony. *See United States v. Boyce*, 564 F.3d 911, 916 (8th Cir. 2009) (holding that a fact-finder's determination as to the credibility of a witness is virtually unreviewable on appeal).

Viewing all the evidence in the light most favorable to the Government and accepting all reasonable inferences, *Yarrington*, 634 F.3d at 449, a reasonable jury could find that Diaz-Pellegaud agreed with Verdugo-Galaviz and Camargo that they would deposit the proceeds from their drug sales into his bank accounts to pay Diaz-Pellegaud for the drugs he was supplying and to ensure their continued supply of drugs. Given that their deposits would be violations of § 1956(a)(1)(A)(i), *Johnson*, 619 F.3d at 919-20, this agreement would be sufficient to support the conviction of Diaz-Pellegaud for conspiracy under § 1956(h). Therefore, we affirm this conviction.

*2. Evidentiary Sufficiency: Methamphetamine and Marijuana*

Diaz-Pellegaud next challenges the sufficiency of the evidence for his convictions for conspiring to distribute methamphetamine and conspiring to distribute

marijuana, both in violation of 21 U.S.C. § 846. "To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007) (quoting *United States v. Espino*, 317 F.3d 788, 792 (8th Cir. 2003)).

Detailed evidence supports these convictions. Verdugo-Galaviz testified at trial that Diaz-Pellegaud approached him in Phoenix, proposing that he sell drugs for him and recruit others to do the same. Verdugo-Galaviz stated that he agreed to this proposal and then successfully recruited others to distribute and personally distributed both methamphetamine and marijuana that he received from Diaz-Pellegaud. Verdugo-Galaviz described how he, Diaz-Pellegaud, and others would unload methamphetamine and marijuana from hidden compartments in freight trains in locations including Fargo, North Dakota, and Salt Lake City, Utah. He also explained how, working with others, he began to distribute Diaz-Pellegaud's drugs in Sioux Falls, South Dakota. Other drug dealers corroborated this account of Diaz-Pellegaud's central role in both the smuggling and distribution of drugs. Once again, the jury's determinations of witness credibility are "virtually unreviewable on appeal." *Boyce*, 564 F.3d at 916 (quoting *United States v. Gomez-Perez*, 452 F.3d 739, 743 (8th Cir. 2006)). Diaz-Pellegaud's alias "Fael" also was found in a drug ledger found at the Menlo Avenue house, and he personally was arrested in a pickup truck containing approximately 160 pounds of marijuana. The evidence presented, considered "in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict," *Yarrington*, 634 F.3d at 449, was easily sufficient to support the jury's convictions on both conspiracy counts. Accordingly, we affirm these convictions.

## B. Garcia

### 1. Evidentiary Sufficiency

Garcia was convicted at trial of conspiring to distribute methamphetamine and conspiring to distribute marijuana, both in violation of 21 U.S.C. § 846. On appeal, he argues that no reasonable jury could find that he had formed the requisite intent to join the conspiracies or that he had known of their respective purposes, both necessary elements of these convictions. *See Jiminez*, 487 F.3d at 1146. His activities related to the conspiracies were, in his view, "mere presence" and not actual involvement, and therefore the evidence presented against him was insufficient to sustain his conspiracy convictions. *See United States v. Fitz*, 317 F.3d 878, 882 (8th Cir. 2003).

Construed in the light most favorable to the government, *Yarrington*, 634 F.3d at 449, witness testimony in this case established far more than Garcia's mere presence. Elias Lechuga testified that Garcia traveled to Sioux Falls with him and other men who had been recruited by Camargo to collect debts owed on past sales of marijuana and methamphetamine. A drug dealer named Kenny Clark testified that Garcia personally confronted him over his outstanding debts and demanded that he pay the money he owed. Mario Rodriguez, another drug dealer who owed Camargo money for drugs, testified that Garcia was part of a group of men that beat him up, although he was not sure that Garcia himself had actually struck him. Garcia also accompanied Rodriguez on an extended drive to Mexico where Rodriguez's delinquencies were to be resolved and while in Mexico spied on another man who owed money to Verdugo-Galaviz. Furthermore, while in Sioux Falls, a Ford Expedition was titled in Garcia's name, and Garcia later left the vehicle in Phoenix. There was substantial testimony presented that, in other instances, vehicles had been deposited in Phoenix as payment to members of the conspiracies for drug debts.

Garcia admitted that he had traveled to Sioux Falls to collect debts but denied that he had known the debts were drug-related. This contention is belied by the fact that, while in Sioux Falls, he stayed at the Menlo Avenue house that was a key focal point of the Sioux Falls drug network. While both Elias Lechuga and Garcia's brother Jesus testified that Garcia had not been aware of the drug-related nature of their activities, they also testified that they had come to Sioux Falls specifically to collect drug debts. It would not have been unreasonable for the jury to conclude that both the testimony of Garcia's innocent state of mind and Garcia's own claims of innocence were incredible. *See United States v. Long Feather*, 299 F.3d 915, 917 (8th Cir. 2002) ("[T]he jury was well within its rights to disregard [the defendant's] self-serving testimony in favor of the testimony of other witnesses.").

Garcia correctly points out that previous cases in which drug dealers' debt collectors have been convicted for conspiring to distribute drugs have involved a greater degree of overlap between distribution and enforcement activities. *See, e.g.*, *United States v. Clay*, 579 F.3d 919 (8th Cir. 2009); *United States v. Lopez*, 443 F.3d 1026 (8th Cir. 2006) (en banc). However, "[w]e must uphold the verdict if there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Wainright*, 351 F.3d 816, 822 (8th Cir. 2003). The evidence presented at trial was sufficient for a reasonable jury to find beyond a reasonable doubt that Garcia had come to Sioux Falls with a team of fellow enforcers specifically to collect drug debts on behalf of the drug distribution operation, satisfying the intent and knowledge requirements of his conspiracy convictions. *See Jiminez*, 487 F.3d at 1146. Therefore, we affirm his convictions.

## 2. *Sentencing*

The district court sentenced Garcia at the bottom of his advisory sentencing guidelines range, 151 months' imprisonment on each conspiracy count with the sentences to run concurrently. "We review the reasonableness of defendants' sentences under a deferential abuse-of-discretion standard, ensuring that the district court committed no significant procedural error and that the sentence is substantively reasonable." *United States v. Reynolds*, 643 F.3d 1130, 1134 (8th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). Garcia argued at sentencing for his guidelines offense level to be reduced by four or two levels because he had been only a "minimal" or "minor" participant in the conspiracy. *See* U.S.S.G. § 3B1.2. He bore the burden of proof to show that he was entitled to such a reduction. *See United States v. Deans*, 590 F.3d 907, 909 (8th Cir. 2010). The district court acknowledged Garcia's argument that his involvement with the conspiracy had not lasted long and that he had known less about the full extent of the conspiracy than others, but the court nevertheless found that the role he played had not been minor or minimal. Explaining its decision, the district court stated that "coming up here from Mexico specifically to collect drug debt . . . means that even though your involvement is limited time wise, you are playing not only a major role but a particularly offensive role." "We review for clear error a district court's finding as to a defendant's role in the offense under section 3B1.2." *United States v. Sweeney*, 611 F.3d 459, 476 (8th Cir. 2010). Given the evidence presented at trial and Garcia's role in the conspiracy, "the trial court's finding does not leave us with a 'definite and firm conviction that a mistake has been committed.'" *United States v. Ortiz*, 236 F.3d 420, 422 (8th Cir. 2001) (quoting *United States v. Westerman*, 973 F.2d 1422, 1428 (8th Cir. 1992)). We therefore do not find clear error in the district court's decision to deny Garcia minimal or minor participant status under § 3B1.2.

Garcia also argues that his sentence was substantively unreasonable in light of the sentencing factors in 18 U.S.C. § 3553(a). When assessing substantive reasonableness, we consider the totality of the circumstances at sentencing, and we review for abuse of discretion only. *Gall*, 552 U.S. at 51. "If the sentence imposed is within the advisory Guidelines range, this court 'may, but is not required to, apply a presumption of reasonableness.'" *United States v. Delgado-Hernandez*, 646 F.3d 562, 568 (8th Cir. 2011) (per curiam) (quoting *Gall*, 552 U.S. at 51). "A sentence is substantively unreasonable if the district court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *Id.* (quoting *United States v. Lozoya*, 623 F.3d 624, 626 (8th Cir. 2010)).

Garcia contends that a number of his co-conspirators, many of whom played very significant roles in the organization, received less severe sentences. He mentions in particular Kenny Clark, Mario Rodriguez, Elias Lechuga, and Jesus Echeverria-Pineda. All of these men, though, pled guilty, cooperated with the investigation, and testified for the Government at trial. They are thus not truly similarly situated to Garcia within the meaning of 18 U.S.C. § 3553(a)(6). *See United States v. Bowie*, 618 F.3d 802, 819 (8th Cir. 2010), *cert. denied*, 562 U.S. ---, 131 S. Ct. 954 (2011). Garcia also contends that his lack of a prior criminal history, and what he argues is a resultant lack of a need to protect the public from potential future crimes, militated in favor of a lesser sentence. The sentencing court considered this factor, though, and it cited his clean record, his youth, and his "potential" as the reasons for pronouncing a sentence at the low end of the guidelines range. Overall, it is clear from the transcript of the sentencing hearing that the district court considered the § 3553(a) factors as required, and Garcia points to no basis for us to find an abuse of discretion within the meaning of *Gall*. Accordingly, we affirm his presumptively reasonable guidelines sentence.

-12-

### C. Burgos-Valdez

#### 1. Evidentiary Sufficiency

Burgos-Valdez was convicted at trial of conspiring to distribute methamphetamine in violation of 21 U.S.C. § 846.  On appeal, he argues that the evidence presented against him was legally insufficient to support his conviction "in light of the incredible testimony [of the Government's] witnesses and [the] lack of physical evidence tying [him] to the conspiracy."  Burgos-Valdez was a passenger in a vehicle that was pulled over by police for a routine traffic stop.  Police found three kilograms of methamphetamine in the center console of the vehicle.  The driver of the vehicle, Jorge Salgado, pled guilty to the charges against him, cooperated with the government, and testified at trial.  Salgado testified that Burgos-Valdez had been involved in acquiring methamphetamine in Phoenix for Dario Verdugo-Galaviz and that Burgos-Valdez had packed the methamphetamine into the vehicle in which they were caught.  If credited by the jury, Salgado's testimony alone was sufficient to sustain Burgos-Valdez's conviction. *See Bowie*, 618 F.3d at 814 (holding that even the wholly uncorroborated testimony of an accomplice is sufficient to sustain a conviction absent facial incredibility or insubstantiality).  Because a jury's determinations of witness credibility are "virtually unreviewable on appeal," *Boyce*, 564 F.3d at 916, and because we must construe the evidence presented "in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict," *Yarrington*, 634 F.3d at 449, Burgos-Valdez's insufficiency claim fails, and we affirm his conviction.

#### 2. Sentencing

The district court sentenced Burgos-Valdez to 240 months' imprisonment.  Burgos-Valdez argues that his below-guidelines-range sentence was substantively

unreasonable because of disparities between his sentence and that of Jorge Salgado, who Burgos-Valdez claims was a similarly situated defendant. The district court specified proper reasons for its disparate treatment of Burgos-Valdez and Salgado, including the fact that Salgado pled guilty and its finding that Salgado was a minor participant while Burgos-Valdez was not. *See Bowie*, 618 F.3d at 819; U.S.S.G. § 3B1.2. Burgos-Valdez also asserts that the district court did not properly explain his sentence, as required by 18 U.S.C. § 3553(c). While Burgos-Valdez is correct that the court did not engage in an expansive recitation of the § 3553(a) factors, it was not required to do so. *See United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). In this case, the record is sufficient to allow for meaningful review, *see Gall*, 552 U.S. at 50, and it shows that the § 3553(a) factors were considered properly, *see United States v. Brown*, 627 F.3d 1068, 1073-74 (8th Cir. 2010), *cert. denied*, 562 U.S. ---, 132 S. Ct. 274 (2011). Therefore, we do not find an abuse of discretion in the district court's sentencing of Burgos-Valdez, and we affirm his sentence.

### D. Melendez-Rocha

#### 1. New trial

At the outset of the trial in response to a motion *in limine*, the district court ordered that no mention be made of Melendez-Rocha's immigration status. During *voir dire* and again during his closing argument, co-defendant Michelle Munoz's counsel alluded to the fact that all of the defendants other than Munoz were not citizens. Both of these instances prompted Melendez-Rocha to move for a mistrial. The district court refused to declare a mistrial but did issue a curative jury instruction. We review its decision to deny the request for a new trial for abuse of discretion. *United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008).

"We give the district court 'broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect' of any possible prejudice." *United States v. Urqhart*, 469 F.3d 745, 749 (8th Cir. 2006) (quoting *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997)). "[L]ess drastic measures such as a cautionary instruction are generally sufficient to alleviate prejudice." *Davidson*, 122 F.3d at 538. When such an instruction is given, we must "determine whether the verdict was 'substantially swayed' by the prejudicial comment." *United States v. Urick*, 431 F.3d 300, 304 (8th Cir. 2005) (quoting *United States v. Coleman*, 349 F.3d 1077, 1087 (8th Cir. 2003)). "In making this determination, we must evaluate whether a curative instruction was sufficient in the context of the entire trial, and weigh the prejudice against the strength of the government's evidence." *Id.* "This court will affirm a conviction . . . where there was 'substantial evidence' of guilt." *Id.* (quoting *Coleman*, 349 F.3d at 1087).

The evidence of Melendez-Rocha's guilt was substantial. Maria Rojas, who worked as a driver and assistant for Dario Verdugo-Galaviz, testified that she delivered money and a Mercedes-Benz automobile to Melendez-Rocha on Verdugo-Galaviz's behalf as payment for methamphetamine. She further testified that she and Melendez-Rocha discussed his drug distribution business extensively. Later, Rojas offered to distribute drugs for Melendez-Rocha, but he told her that his business was not doing very well and declined her offer. Rojas also testified that on Verdugo-Galaviz's orders she deposited money owed to Melendez-Rocha for drugs into a bank account. Sergio Munoz testified that he transported methamphetamine from Melendez-Rocha in Phoenix to Verdugo-Galaviz in Sioux Falls. Melendez-Rocha dropped methamphetamine off at Munoz's house, and then Munoz would drive it north to Sioux Falls. Munoz testified that he delivered a boat to Melendez-Rocha as payment for a drug debt, that he bought drugs from Melendez-Rocha at Melendez-Rocha's house, and that Verdugo-Galaviz deposited money into a bank account for Melendez-Rocha as payment for methamphetamine. Laura Welch, the mother of two

-15-

of Melendez-Rocha's children, gave extensive testimony about Melendez-Rocha's activities in the methamphetamine trade and described how large quantities of methamphetamine were often stored at their home and in his cars and how she withdrew money from bank accounts on his behalf. Laura's mother, Kerri Welch, testified that she set up a bank account on Melendez-Rocha's behalf and would withdraw money for him as it was deposited by others. Because there was "substantial evidence" of Melendez-Rocha's guilt, *Coleman*, 349 F.3d at 1087, the verdict was not "'substantially swayed' by the prejudicial comment," *Urick*, 431 F.3d at 304 (quoting *Coleman*, 349 F.3d at 1087), and therefore the curative instruction given was "sufficient in the context of the entire trial" to alleviate any prejudice that may have resulted from the reference to Melendez-Rocha's immigration status. *See Urick*, 431 F.3d at 304.

## 2. Sentencing

The district court sentenced Melendez-Rocha to 348 months' imprisonment, varying below his advisory sentencing guidelines range to do so. "[W]here a district court has sentenced a defendant below the advisory guidelines range, 'it is nearly inconceivable that the court abused its discretion.'" *United States v. Moore*, 581 F.3d 681, 684 (8th Cir. 2009) (quoting *United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009)). Melendez-Rocha argues that his sentence is substantively unreasonable because the district court failed to consider his age, family situation, or educational status as required by § 3553(a) and that "[h]e is a non-violent drug offender, and 348 months is simply too much time in light of his offense."

We do not require a mechanical recitation of the § 3553(a) factors at sentencing. *Feemster*, 572 F.3d at 461. Instead, "it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." *United States v. Walking Eagle*, 553 F.3d 654, 659 (8th Cir. 2009)

-16-

(quoting *United States v. Little Hawk*, 449 F.3d 837, 840 (8th Cir. 2006)).  Although it did not mechanically list each of these factors, the district court stated that it had considered the § 3553(a) factors in reaching its sentencing decision.  The district court also received and read a number of letters from supporters of Melendez-Rocha, and recognized Melendez-Rocha's non-criminal business activities and the law-abiding character of his family, and heard extensive argument from Melendez-Rocha's counsel.  "[W]here the district court heard argument from counsel about specific § 3553(a) factors, we may presume that the court considered those factors." *United States v. Keating*, 579 F.3d 891, 893 (8th Cir. 2009).

We find no procedural error on the part of the district court, and Melendez-Rocha has not shown that the district court failed to consider the § 3553(a) factors in determining his below-guidelines-range sentence or that his sentence was in any other way substantively unreasonable.  We therefore find no abuse of discretion in Melendez-Rocha's sentence.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

———————————————