NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 15-3590

—————————

UNITED STATES OF AMERICA

v.

CHRISTINE YODER,

Appellant

—————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D. C. Criminal No. 2-14-cr-00587-001
District Judge: Honorable Petrese B. Tucker

—————————

Argued on October 7, 2016

Before: SHWARTZ, COWEN and ROTH, <u>Circuit Judges</u>

(Opinion filed: March 6, 2017)

Robert Epstein, Esq. (ARGUED)
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

Counsel for Appellant

Louis D. Lappen, Esq. (ARGUED)
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

---

OPINION[*]

---

ROTH, Circuit Judge

Christine Yoder entered a guilty plea on two counts of producing child pornography and two counts of distributing child pornography. She was sentenced to twenty-five years' imprisonment followed by ten years of supervised release and required to pay $400 in a special assessment. On appeal, Yoder challenges the District Court's sentence as procedurally and substantively unreasonable. We will affirm.

## I.       Background

Christine Yoder is thirty-two years old and suffers from severe mental disabilities and mental illness. She is estimated to have the intellectual level of approximately a nine-year-old child and has been diagnosed with, among other things, impulse control disorder related to post-traumatic stress disorder in part due to considerable abuse that she has endured at the hands of several different men starting when she was two years old. She has four children and, until her arrest, lived in Philadelphia.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

On May 21, 2014, Yoder communicated online with a confidential source for the FBI. The communication was subsequently taken over by an undercover agent. During this online conversation. Yoder sent sexually explicit pictures of her six-year-old daughter and offered to fly her daughter to Detroit, Michigan, for sexual activity. She said that she wanted to find her daughter a husband and that the daughter would be with the man to whom she was communicating for the rest of his life. She provided enough information for the man to purchase an airplane ticket for her daughter to travel to Detroit.

Two days later, on May 23, 2014, Yoder reiterated to the undercover agent that she was "serious" about sending her daughter to him and sent him more sexually explicit messages. Later that day, Yoder was arrested at her home. The arresting officers recovered approximately forty images of child pornography, thirty-six of which depicted Yoder's six-year-old and the remainder of which depicted Yoder's one-year-old daughter.

Yoder gave a statement to FBI agents, confessing to producing and distributing child pornography. She said that she contacted men online to "see who was sick." She said that she did not intend to send her daughter away, but she also said that "the plan was to let the man take her daughter for the summer and see what happened after that."

On October 30, 2014, a grand jury in the Eastern District of Philadelphia returned a four-count indictment charging Yoder with two counts of employing a child to produce images of the child engaging in sexually explicit conduct in violation of 18 U.S.C. §

2251(a) and two counts of distributing material involving the sexual exploitation of children in violation of 18 U.S.C. § 2252(a)(1).

On March 9, 2015, Yoder entered a plea of guilty on all four counts. Subsequently, she submitted a sentencing memo arguing for a downward departure and a downward variance from the Sentencing Guidelines range on the basis of her personal characteristics and history, which the prosecution opposed in its sentencing memo. On October 20, 2015, the District Court held a sentencing hearing. At the hearing, the defense called witnesses, including an expert, Dr. Faye Sultan, who testified regarding Yoder's psychological and intellectual state and her likelihood of reoffending. Yoder herself spoke briefly. The District Court heard argument about the defense's requests for a departure and a variance from the Guidelines.

After hearing testimony and argument, the judge said:

Ms. Yoder, this Court has the responsibility of fashioning a sentence that takes into account not only the person that stands in front of me, but the crime that was committed. I think we have all agreed that this crime is the most serious crime. There is clearly the need for protection of your children and any other children that you might come in contact with. There is also the history, your history that was presented to the Court. The Court has to take that into consideration.

And taking it into consideration, I will grant the variance. I think a modest variance. I will deny the downward departure, but in granting the variance, I still recognize that while you have had a very tragic history, you brought four little girls into this world, you're responsible for them, and you're responsible for the consequences of your actions in regards to them and anybody else, and that it is necessary, in recognition of the seriousness of the offense and the need to protect your children and others, that you receive a sentence that is a substantial sentence, although a little less than the Sentencing Guidelines, but more than what your attorney has recommended.

4

The judge then imposed sentence. Yoder did not object to the sentence at the time, but she timely appealed her sentence on the grounds that it is procedurally and substantively unreasonable.

## II.    Discussion[1]

Because Yoder did not timely object to the District Court's procedure at sentencing, we review the procedural reasonableness of the District Court's sentence under a standard of plain error.[2] We review the substantive reasonableness of the District Court's sentence for abuse of discretion.[3]

### A. Procedural Reasonableness

When an appellant did not object to an error occurring before the district court, we exercise plain error review.  Under this standard, the Court considers whether:  (1) there was an error; (2) the error was "plain"; (3) the error affects substantial rights—ordinarily, whether the error was prejudicial; and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."[4]

> In sentencing, a district court must follow a three-step process:
>
> First, a district court must calculate a defendant's Guidelines sentence . . ..
> Second, a district court must formally rule on the motions of both parties
> and state on the record whether they are granting a departure and how that
> departure affects the Guidelines calculation, and take into account our
> Circuit's pre-*Booker* case law, which continues to have advisory force.
> Third, a district court is required to exercise its discretion by considering
> the relevant § 3553(a) factors . . . in setting the sentence it imposes

---

[1] The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231.  We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] *United States v. Flores-Mejia*, 759 F.3d 253, 258 (3d Cir. 2014)

[3] *Gall v. United States*, 552 U.S. 38, 51 (2007).

[4] *Flores-Mejia*, 759 F.3d at 259.

regardless whether it varies from the sentence calculated under the Guidelines.[5]

One goal of this process is to provide an adequate record for an appeals court to verify that the district court considered the arguments of the parties. However, a court need not address parties' arguments or the sentencing factors at length; they need only be given "meaningful consideration."[6]

Here, the District Court followed the appropriate steps and provided an adequate record, so it did not commit plain error. The first step is to calculate the Sentencing Guidelines range, and here the Sentencing Guidelines range was undisputed: both parties acknowledged that it was thirty years to life. The second step is to rule on any motions from the parties and state on the record whether any departure is granted. The District Court denied defense counsel's request for a departure. Yoder does not argue that the District Court erred in either of these steps.

The third step is for the court to exercise its discretion. In doing so, the court must consider the § 3553(a) factors, which the District Court here did. The judge considered "the crime that was committed," which she described as "the most serious crime."[7] This consideration relates to § 3553(a)(1), "the nature and circumstances of the offense," as well as § 3553(a)(2)(A), the need for the sentence "to reflect the seriousness of the offense . . . ." She considered "the need for protection of your children and any children

---

[5] *Id.* at 256 (internal quotation marks, citations, and brackets omitted).
[6] *Id.*
[7] App. 166.

that you might come in contact with,"[8] which relates to § 3553(a)(2)(C), the need for the

sentence "to protect the public from further crimes of the defendant . . .."  She considered

"the person that stands in front of me" and "[the defendant's] history that was presented

to the Court,"[9] which relates to § 3553(a)(1), "the history and characteristics of the

defendant . . .."  She explicitly balanced all these factors together and related them to the

sentence when she said, "[I]n granting the variance, I still recognize that while you have

had a very tragic history, . . . it is necessary, in recognition of the seriousness of the

offense and the need to protect your children and others, that you receive a sentence that

is a substantial sentence . . .."[10]  Thus, the District Court considered the relevant

§ 3553(a) factors.

Yoder argues on appeal that the District Court entirely failed to consider two

potentially meritorious arguments in relation to the sentence and therefore exercised its

discretion improperly.  First, Yoder requested a variance to the statutory minimum of

fifteen years on the basis of her personal characteristics and history.[11]  The judge

responded to Yoder's arguments by noting that the sentence "t[ook] into account the

person that st[ood] in front of" the District Court, as well as referring to the defendant's

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *See* 18 U.S.C. 3553(a)(1).

"very tragic history."[12]  These statements, coupled with the fact that the judge did grant a variance, suggest that the judge considered Yoder's arguments for a variance.  Thus, we are not persuaded that the judge committed plain error by entirely failing to consider Yoder's personal characteristics and history.

Second, Yoder argued that the Guidelines range for child pornography offenses is unreasonably high because it was developed by congressional directive rather than by the Sentencing Commission pursuant to its usual institutional role.[13]  This argument was based on our holding in *United States v. Grober* that it would not be an abuse of discretion for a district court to conclude that "a within-Guidelines sentence would not meet the sentencing purposes set out in § 3553(a), even in a typical [child pornography] case."[14]  The District Court did not explicitly respond to this argument, and on appeal, Yoder argues that this lack of response constitutes plain error requiring reversal.  We disagree.  Yoder cited *Grober* in support of an argument for a downward variance, and the District Court granted a downward variance.  Thus, there was no reason for the District Court to further address *Grober*.

Although the judge's comments were brief, the judge provided enough of a record to show that she considered the parties' relevant arguments.  Consequently, the sentence was not procedurally unreasonable.

---

[12] These individualized considerations distinguish this case from *United States v. Olhovsky*, 562 F.3d 530 (3d Cir. 2009), on which Yoder relies heavily, because in *Olhovsky*, the sentencing court omitted "any consideration for [the defendant's] subnormal social development" and amenability to treatment despite testimony regarding these points.  *Id.* at 550.  The judge considered these points here, albeit briefly.

[13] *See* App. 47.

[14] 624 F.3d 592, 608 (3d Cir. 2010).

**B. Substantive reasonableness**

A sentence may be reversed as substantively unreasonable if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."[15] This is a high bar; only rarely will it be "clear that no acceptable reasoning can justify a given sentence."[16] Generally, "[i]n reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may . . . take the degree of variance into account and consider the extent of a deviation from the Guidelines . . .."[17] However, an appeals court may not apply a presumption of unreasonableness to an outside-Guidelines sentence, require extraordinary circumstances to justify an outside-Guidelines sentence, or use "the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."[18] A below-Guidelines sentence is not likely to be substantively unreasonable on the ground that it is too long.[19]

Here, Yoder presented plausible arguments for a downward variance, including that she was amenable to treatment and had diminished culpability due to her mental disabilities and tragic history. After considering these arguments, the judge granted the variance; it was simply smaller than Yoder felt was appropriate. None of Yoder's unique

---

[15] *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).
[16] *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008).
[17] *Gall v. United States*, 552 U.S. 38, 47 (2007).
[18] *Id.*
[19] *See United States v. Diaz-Pellegaud*, 666 F.3d 492, 504 (8th Cir. 2012) ("Where a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion.") (quoting *United States v. Moore*, 581 F.3d 681, 684 (8th Cir. 2009)) (internal quotation marks and brackets omitted).

circumstances obliged the District Court to grant the maximum variance permitted by statute. The District Court was permitted to weigh Yoder's likelihood of reoffending against the potential harms if she did reoffend—which, as no one disputes, could be extremely serious—and determine that a small variance, rather than the maximum variance, was appropriate. The sentence was not substantively unreasonable.

III. **Conclusion**

For the foregoing reasons, we will affirm the judgment of the District Court.

*United States of America v. Yoder*, No. 15-3590, dissenting.

COWEN, *Circuit Judge*.

I must respectfully dissent. The District Court's sentence was both procedurally and substantively unreasonable. It committed plain procedural error because it did not begin the sentencing process by calculating the applicable Guidelines range. The District Court then failed to give "'meaningful consideration'" to the statutory sentencing factors, especially the characteristics of the defendant herself. (Maj. Op. at 6 (quoting United States v. Flores-Mejia, 759 F.3d 253, 256 (3d Cir. 2014) (en banc)).) It likewise failed to acknowledge and respond to Yoder's request for a downward variance on the basis of uncontested expert evidence "regarding Yoder's psychological and intellectual state and her likelihood of reoffending." (Id. at 4.) I also conclude that the sentence was substantively unreasonable because no reasonable sentencing court would have sentenced this particular defendant to twenty-five years' imprisonment for the reasons the District Court provided.

A sentencing court must begin by calculating a defendant's Guidelines sentence. See, e.g., Flores-Mejia, 759 F.3d at 256. The government acknowledges that the District Court "did not explicitly state the [Guidelines] range." (Appellee's Brief at 29.) When asked by the District Court if there were any additions or corrections to the PSR, defense counsel indicated that there were none (and agreed to a minor correction offered by the government). Yoder acknowledges that the correct Guidelines range (thirty years to life) was set forth in the PSR. But we "value formality in sentencing to the extent that it promotes the goals of procedural uniformity, meaningful review, and substantive

fairness." United States v. Clark, 726 F.3d 496, 502 (3d Cir. 2013) (citing United States v. Fumo, 655 F.3d 288, 318 (3d Cir. 2011); United States v. Ausburn, 502 F.3d 313, 328-29 (3d Cir. 2007)). "Chief among our duties in fulfilling this 'important role' [of appellate review] is ensuring that district courts follow proper sentencing procedures." United States v. Merced, 603 F.3d 203, 214 (3d Cir. 2010) (quoting United States v. Tomko, 562 F.3d 558, 575 (3d Cir. 2009) (en banc)). At the very least, the District Court should have begun at the first step of the sentencing process—the calculation of the Guidelines range—instead of asking questions about the PSR only after it had already purportedly completed the second and third steps by ruling on the departure motion and considering the relevant statutory factors.

In any event, the District Court clearly failed to consider in a meaningful fashion the statutory factors, especially Yoder's own personal characteristics, as well as Yoder's request for a variance based on her intellectual and mental disabilities, amenability to treatment, and likelihood of reoffending. "To satisfy step three, the district court 'must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis.'" Mejia-Flores, 759 F.3d at 256 (quoting United States v. Begin, 696 F.3d 405, 411 (3d Cir. 2012)).

Yoder presented, through the report and testimony of a clinical psychologist, extensive evidence regarding her serious intellectual and mental disabilities. As the majority recognizes, she is a thirty-two-year-old woman who has the approximate intellectual level of a nine-year-old child. She was hospitalized on two occasions on

2

account of her mental problems and diagnosed with "Major Depressive Affective Disorder, single episode, severe, with psychotic features; Dysthymic Disorder; and Post-Traumatic Stress Disorder, delayed 'type' onset" (A55) as well as "Major Depression, recurrent, severe" (A56.) After her arrest, the doctors at the Philadelphia Federal Detention Center found that she suffered from "Unspecified Bipolar and Related Disorder, Unspecified Anxiety Disorder, and Unspecified Intellectual Disability." (A56.) Concluding that Yoder is neither a pedophile nor a sexual predator, Dr. Sultan opined that "[s]he's a very infantile, very compulsive, needy person who is desperate for the attention of men." (A112.) According to Dr. Sultan, Yoder's conduct was motivated by her desire to attract the attention, and possibly the financial assistance, of men. The expert further opined that Yoder (although she understood on a certain level that what was doing was wrong) did not appreciate the serious harm she had inflicted on her children.

In addition, the evidence presented to the District Court clearly indicated that Yoder is amenable to treatment and her risk of reoffending is very low. According to Dr. Sultan, "[t]here are specific [BOP] programs, cognitive behavioral programs, that are shown to be quite effective over a period of time." (A111-A112.) Yoder would also benefit from a combination of an antipsychotic medication, an antidepressant, and psychotherapy. Yoder had been placed on such medications following her arrest, and Dr. Sultan observed her improvement over time. Yoder had expressed deep remorse and sadness about the harm she caused her children, for whom "she expresses great love and affection." (A111.)

3

Asking for the statutory minimum sentence of fifteen years, Yoder's counsel insisted that this was an unusual case and asserted that her disabilities (and history of abuse) "caus[ed] her to behave in the way that caused this crime to happen." (A157.) Counsel further noted "her success on consistent medication" as well as "the fact that there are programs that exist to address just these issues." (A160.) The government did not present any expert evidence of its own to contest Dr. Sultan's assessment. Although Dr. Sultan was cross-examined at some length, she continued to insist that, with the proper treatment regimen, "[Yoder's] very unlikely to reoffend." (A138.) In fact, the government does not claim that these arguments about Yoder's intellectual and mental disabilities, amenability to treatment, and the likelihood of reoffending lacked either colorable legal merit or a factual basis. As the majority puts it, "Yoder presented plausible arguments for a downward variance, including that she was amenable to treatment and had diminished culpability due to her mental disabilities and her tragic history." (Maj. Op. at 9.)

Yet the District Court failed to acknowledge and respond to these disability and recidivism arguments—and failed to consider the evidence regarding these "characteristics of the defendant" under § 3553(a)(1). According to the majority, the sentencing judge "responded to Yoder's arguments by noting that the sentence 't[ook] into account the person that st[ood] in front of' the District Court, as well as referring to the defendant's 'very tragic history.'" (Maj. Op. at 7-8 (footnote omitted).) "These statements, coupled with the fact that the judge did grant a variance, suggest that the

4

judge considered Yoder's arguments for a variance." (Id. at 8.) However, § 3553(a)(1) refers to both the "history" as well as the "characteristics of the defendant." See, e.g., TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001))). Even if the District Court adequately considered Yoder's "history" of abuse, it did not meaningfully address the issues regarding her intellectual and mental "characteristics." The reference to having taken into account the person standing in front of me appears to be nothing more than a prefatory statement of a district court's general obligations at sentencing. After all, the District Court immediately qualified this statement by referring to "the crime that was committed" (A166)). Given the extensive and uncontested evidence presented in this case, I would expect, at the very least, a sentencing court to say something about the fact that the person sentenced to twenty-five years' imprisonment functions intellectually at the level of a nine-year-old child—yet has a very low chance of committing future offenses given her amenability to a treatment regimen, including a highly successful prison program designed for individuals just like her. The District Court did not do so.

According to the majority, the District Court's "individualized considerations distinguish this case from United States v. Olhovsky, 562 F.3d 530 (3d Cir. 2009), on which Yoder relies heavily, because in Olhovsky, the sentencing court omitted 'any consideration for [the defendant's] subnormal social development' and amenability to

5

treatment despite testimony regarding these points." (Maj. Op. at 8 n.12 (quoting Olhovsky, 562 F.3d at 550).) I cannot agree. In Olhovsky, we found that a child pornography sentence was procedurally unreasonable because, among other things, "it is not at all apparent that the court actually considered the lengthy, very specific and highly positive reports of any of the three defense experts" and instead focused on incapacitation, deterrence, and punishment to the exclusion of the other sentencing factors. Olhovsky, 562 F.3d at 547. Given the treating psychologist's belief that Olhovsky's lack of emotional maturity (i.e., he functioned at the emotional level of a fourteen or fifteen-year-old juvenile) directly contributed to the offense, "the sentencing court should have either explained the extent to which, if any, Olhovsky's immaturity factored into its sentence of six years imprisonment, or explained why it was irrelevant." Id. at 551. Likewise, "it is not at all apparent" that the District Court in this case considered Dr. Sultan's uncontested expert report and testimony, at least with respect to Yoder's disabilities, her amenability to treatment, or her likelihood of reoffending. In fact, it did not expressly mention the expert evidence or even refer to Dr. Sultan herself. Focusing on the seriousness of Yoder's criminal conduct and the need to protect children, the District Court "was so appalled by the offense that it lost sight of the offender." Id. at 549. The sentencing court in Olhovsky stated that the defendant had not been responsive to treatment, despite, inter alia, the opinion of the treating psychologist indicating the opposite. Id. at 548-49. It also characterized Olhovsky as a "pedophile monster," even though the government's own expert did not support such a drastic characterization. Id.

6

at 547-48.  In this case, the District Court indicated that Yoder posed a risk to her children and others—without mentioning Dr. Sultan's opinion that Yoder is neither a pedophile nor a sexual predator and, on the contrary, is amenable to treatment and very unlikely to reoffend.  I also note that this Court found that the sentence was unreasonable even though a variance had in fact been granted.[1]  Id. at 546-53.

In addition, I find that the procedural errors committed here were obvious, affected substantial rights (i.e., they were prejudicial), and affected the fairness, integrity, or public reputation of judicial proceedings.  See, e.g., Flores-Mejia, 759 F.3d at 259.  It is uncontested that the errors, if they had in fact occurred, were obvious.  Insofar as these errors implicate fundamental aspects of the sentencing process, they affected substantial rights.  Imposing a lengthy sentence—without following the requisite sentencing procedures, without considering meritorious variance arguments, and without really

---

[1]  Accordingly, I believe that the District Court did not meaningfully consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," § 3553(a)(2)(D), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), and the need to "protect the public from further crimes of the defendant," § 3553(a)(2)(C).  The District Court did not mention Dr. Sultan's testimony about the existence of "specific programs, cognitive behavioral programs, that are shown to be quite effective over a period of time."  (A111-A112.)  In turn, "Yoder's intellectual disability, her functioning at the level of a nine-year-old child, makes her substantially different from most other child pornography defendants."  (Appellant's Brief at 24 (citation omitted).)  Finally, the District Court told Yoder there was a clear need "for protection of your children and any other children that you might come in contact with" (A166)—without acknowledging and responding to the uncontested expert evidence indicating that, while Yoder is neither a pedophile nor a sexual predator, she is amendable to treatment and has a very low likelihood of reoffending.

7

addressing the statutory sentencing factors—likewise implicated the fairness, integrity, and public reputation of this criminal proceeding.  See, e.g., Clark, 726 F.3d at 502 (noting that we value formality in sentencing); Merced, 603 F.3d at 216 ("We require this explanation [of the sentence], not because we distrust courts or seek to second guess them, but because such an explanation is necessary and vital to us in performing meaningful substantive reasonableness review." (citing Tomko, 562 F.3d at 575; Cooper v. United States, 437 F.3d 324, 329 (3d Cir. 2006))).

"[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Tomko, 562 F.3d at 568.  While our preferred course upon finding that the district court committed procedural error is to remand the case without going any further, see, e.g., Merced, 603 F.3d at 214, "'procedural problems may lead to substantive problems, so that there are times when a discussion of procedural error will necessarily raise questions about the substantive reasonableness of a sentence,'" Olhovsky, 562 F.3d at 553 (quoting United States v. Levinson, 543 F.3d 190, 193 (3d Cir. 2008)); see also, e.g., Merced, 603 F.3d at 215 ("These procedural requirements exist to 'guide the [district court's] exercise of discretion,' and failure to observe them may lead a court to impose a substantive unreasonable sentence." (quoting United States v. Goff, 501 F.3d 250, 256 (3d Cir. 2007))).  Accordingly, the Olhovsky Court determined that, in light of the factual and

8

procedural errors committed by the sentencing court, it was substantively unreasonable to sentence Olhovsky to six years of imprisonment. Olhovsky, 562 F.3d at 553.

I reach the same conclusion here. I do not, by any means, minimize the despicable nature of Yoder's criminal conduct. She took sexually explicit photographs of her own young children (an eighteen-month-old daughter and a six-year-old daughter), sent sexually explicit photographs of her six-year-old daughter to someone she believed to be a pedophile, and then offered to send this child to this individual for sexual activity (going so far as to provide him with the information needed to obtain an airline ticket). In turn, Dr. Sultan herself acknowledged that Yoder horribly damaged her children (who could continue the cycle of abuse by becoming sexual offenders themselves), and, as the majority notes, the potential harm if she did reoffend "could be extremely serious." (Maj. Opinion at 10.) With that said, I do not believe that a reasonable sentencing court would have sentenced a severely intellectually disabled and mentally ill abuse victim—who (according to uncontested expert testimony) is neither a pedophile nor a sexual predator but is amenable to treatment and presents a very low risk of reoffending—to serve *twenty-five years* in prison. As I have already observed, the District Court, like its counterpart in Olhovsky "was so appalled by the offense that it lost sight of the offender." Id. at 549. While a substantial term of imprisonment appears to be appropriate, a sentence of twenty-five years—as opposed to a sentence closer to the statutory minimum—was substantively unreasonable under the specific circumstances of this case.

9

Because I thereby determine that the sentence imposed by the District Court was both procedurally and substantively unreasonable, I would vacate the sentence and remand for resentencing.