# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-2074

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Oscar Naholi

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: November 15, 2018
Filed: December 26, 2018

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A jury convicted Kevin Naholi of possession of a firearm by an alien unlawfully in the United States after having been previously convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(5),

922(g)(9), and 924(a)(2). The district court[1] sentenced Naholi to a 60-month term of imprisonment. Naholi appeals, challenging the district court's evidentiary ruling which excluded a government witness's prior inconsistent statements and for prosecutorial misconduct based on alleged improper burden shifting during rebuttal argument. We affirm.

## I.     Background

"We recite the facts in the light most favorable to the jury's verdict." United States v. Daniel, 887 F.3d 350, 353 (8th Cir. 2018) (quoting United States v. Payne-Owens, 845 F.3d 868, 870 n.2 (8th Cir. 2017)).

Kevin Naholi and Karen Franks Naholi ("Karen") were married and resided together in a house in Cedar Rapids, Iowa. After two and a half years of marriage, on the morning of August 26, 2017, Naholi was served with divorce papers. That evening Naholi's neighbor, Matte Davis, was walking home from a restaurant with her two children when she saw Naholi in his front yard "holding something." Davis was unsure at first what Naholi was holding. She thought it was a stick. When she continued walking closer, Davis identified the object as a gun. Davis asked Naholi to put the gun away or point it down so he would not get in trouble. Davis testified that she was unsure if Naholi heard her talking to him and she was unsure if the object was a rifle or a shotgun because she does not know the difference between the two, but she was sure it was a gun and that Naholi aimed the gun at her and her two children. Davis "panicked" and went to another neighbor's house around the corner and called 911.

---

[1]The Honorable Linda R. Reade, United States Judge for the Northern District of Iowa.

During the 911 call, Davis reported that she was "like a thousand feet away" when she saw Naholi with the firearm. At trial, Davis testified that she had "overexaggerated" and she "actually was very close, like maybe right across the street." On cross-examination, Davis admitted that she was not sure how far away she was from Naholi when she saw him with the gun – it could have been 100 feet or it could have been 200 feet. While on the phone with the dispatcher, Davis could hear Karen yelling at Naholi to "come inside" or something similar.

When law enforcement officers arrived on scene, Karen and Naholi were inside the residence. Officer Charity Hansel called the residence. Karen answered the phone and she came outside consistent with the officer's request. Karen reported to an officer, who was stationed across the street, that Naholi did not have a gun and that he was "just sitting with me." Officer Hansel called the residence again but Naholi would not come out. Officers entered the home and Naholi was found in the front bedroom, lying on the bed. A rifle was found on the floor in the master bedroom, which was located in the back of the house.

Karen owned a .22 caliber rifle. She kept it inside a case in the back of her closet in the master bedroom. She told the jury that she only moved the rifle when she cleaned the closet floor. She testified that on the day of the incident she did not touch the rifle. According to Karen, she left the residence in the afternoon and returned around 5:00 p.m. She had a "peaceful" conversation with Naholi at roughly 6:00 p.m. in the sitting room, which was located just outside the master bedroom, of the house. It was approximately 20 minutes later that law enforcement arrived. Karen testified she was surprised when the officers appeared. She also testified that she did not see Naholi with a firearm that day.

Officer Hansel testified that when she called the residence and Karen answered the phone, Karen said a man had entered her home and he "maybe" had a gun on him.

Karen testified at trial that she did not remember telling law enforcement that Naholi had a gun. Karen also denied calling out to Naholi to come inside the residence.

Naholi denied possessing a firearm. He called neighbor Brian Baxter as a witness at trial. Baxter testified that he had previously observed Naholi walking with a cane. Officer Timothy Brown confirmed that wooden canes and an umbrella were found near the entrance of the home.

An integral aspect of Naholi's defense was Karen's credibility. Naholi sought to convince the jury that Karen wanted Naholi gone so she framed him. Naholi attempted to undermine Karen's credibility by offering a number of inconsistent statements by Karen on the evening in question. He elicited some of the inconsistencies on cross-examination. As part of his case, Naholi called Officer Hannah Thurston as a witness for the purpose of proffering additional inconsistent statements made by Karen in an attempt to impeach Karen's testimony. The district court sustained the government's objection and excluded the testimony as hearsay. Naholi made an offer of proof during which Officer Thurston testified that Karen initially told her that she did not have a firearm inside the residence. Later in the conversation, Karen told Officer Thurston that Naholi told her that he had a firearm in the residence, but that she had never seen it.

The jury convicted Naholi of possession of a .22 caliber rifle by a prohibited person. Naholi was sentenced to 60 months' imprisonment to be followed by three years of supervised release. Naholi timely appealed.

## II.    Discussion

### A.    *Admissibility of Prior Inconsistent Statement*

Naholi argues the district court committed reversible error when it excluded the introduction of extrinsic evidence of a government witness's prior inconsistent statement. The district court excluded Officer Thurston's testimony as inadmissible hearsay. By definition, the testimony was not hearsay. Federal Rule of Evidence 801(c) defines "hearsay' as a statement, other than one made by the declarant while testifying at a trial or hearing, which is offered to prove the truth of the matter asserted. "[W]hen a party offers an out-of-court statement made by a government witness in order to impeach that witness by showing that [s]he had made statements contrary to h[er] trial testimony–and not to establish the truth of h[er] out-of-court statement–the out-of-court statement is not hearsay." United States v. Yarrington, 634 F.3d 440, 448 (8th Cir. 2011) (citing United States v. Eagle, 498 F.3d 885, 888 (8th Cir. 2007)). "In such cases, Federal Rule of Evidence 613(b) provides that "[e]xtrinsic evidence of a prior inconsistent statement ... is not admissible unless the witness is afforded an opportunity to explain or deny [the prior statement] and the opposite party is afforded an opportunity to interrogate the witness [about the statement]...." Id.

The government argues (1) Naholi's offer of proof was untimely, and (2) the officer's testimony was not admissible under Rule 613 because it was not inconsistent with Karen's trial testimony. As to the government's first argument, Federal Rule of Evidence 103(a)(2) requires that when a "ruling excludes evidence, a party inform[] the court of its substance by an offer of proof, unless the substance was apparent from the context." The record indicates no uncertainty from the court about the nature of the evidence being elicited. When Officer Thurston was on the stand, the district court's ruling was clear and the record does not appear to reflect an opportunity for further discussion in the jury's presence:

Q. Did you ask her if she had a firearm in the residence?

A. I did.

Q. What did she state?

[PROSECUTOR]: Objection, hearsay.

THE COURT: Do you agree it's hearsay? And if it is hearsay, does an exception apply?

[DEFENSE COUNSEL]: It's offered for impeachment, Your Honor. It's not hearsay.

THE COURT: Well, that's not an exception to the hearsay rule, so the objection is sustained.

[DEFENSE COUNSEL]: Under 801, it's not hearsay when it's offered for impeachment, Your Honor.

THE COURT: I've ruled. You may proceed.

While Naholi did not immediately request to make an offer of proof at this time, Naholi made the request at the first break after the jury was excused to allow the court to take up issues of law. While the jury was on break, the court was amenable to taking the offer of proof. On this record, Naholi's claimed evidentiary error does not fail on timeliness grounds.

As to the government's second argument, Karen's statements documented by law enforcement officers on the evening in question were, at times, inconsistent with her sworn testimony. For example, Karen denied at trial telling Officer Hansel that a man had just entered her home and that he had a gun. Instead, in contrast with Officer Hansel's report and her testimony, Karen testified that she said Naholi did not have a gun and was sitting with her. When asked whether Karen recalled telling law

-6-

enforcement that Naholi had a couple of guns, Karen responded that she could not remember. Yet, Karen testified on re-direct that she had no difficulty recalling what happened on August 26th because "it's very clear in [her] mind."

Naholi should have been allowed to introduce Officer Thurston's testimony regarding her conversation with Karen that evening for impeachment purposes. We have explained "[t]he reason for permitting the use of inconsistent statements to attack the credibility of a witness does not flow from their greater proximity in time to the offense; rather, it rests upon the 'notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements.'" United States v. Rogers, 549 F.2d 490, 495–96 (8th Cir. 1976) (quoting C. McCormick, Handbook of the Law of Evidence § 34, at 68 (2d ed. 1972)). "Inconsistencies may be found in changes in position; they may be implied through silence; and they may also be found in denial of recollection." Id. at 496.

Karen testified that she believed Naholi did not know about her .22 caliber rifle stored in the closet. She also could not recall telling law enforcement that Naholi told her that he had a handgun at some point.

> Q. Ma'am, do you recall telling the police, among other things, that Mr. Naholi might have had a handgun at some other time?
>
> A. I don't remember saying that. I could have. I don't remember.
>
> Q. You don't remember. Did you believe that or had you been told that?
>
> A. Yes.
>
> Q. By whom?
>
> A. Mr. Naholi.

Officer Thurston's testimony that Karen first said she did not have a firearm in the house and subsequent statement that Naholi told her that he had a firearm was not offered to prove the truth of these matters. It was evidence the defense sought to introduce as prior inconsistent statements that could bear on the witness's credibility. Whether the statements actually contradicted sworn testimony, or were discrepancies that resulted from confusion, or there was an explanation that would have clarified the discrepancies are all issues that go to the weight to be given the evidence, not its admissibility. The evidence proffered by Naholi was non-hearsay by definition and should have been permitted as extrinsic evidence of a prior inconsistent statement in order to impeach Karen.

Notwithstanding, even if the district court erred in excluding Officer Thurston's testimony, the error was harmless. The government introduced substantial evidence of Naholi's guilt. Davis's observation of Naholi possessing a gun and aiming it at her and her two children was sufficient for a jury to find Naholi knowingly possessed a firearm on August 26. Davis called 911 in response to her observation of Naholi in the front yard with a gun. Karen's testimony was generally favorable to Naholi. Naholi pointed out to the jury that Karen's testimony was inconsistent with other statements she made to law enforcement. In light of Davis's testimony regarding her personal observation of Naholi holding a gun and pointing it at her and her children and then calling 911 based on that conduct, any further undermining of Karen's credibility would not have had an impact in any significant way on the result. We, therefore, find the error in excluding Officer Thurston's testimony was harmless.

B.    *Alleged Prosecutorial Misconduct*

Naholi argues that the prosecutor engaged in misconduct by shifting the burden of proof during his rebuttal closing argument. The government asserts the arguments were permissible because Naholi opened the door. We find the arguments were not improper.

Because of the district court's broad authority to control closing arguments, the court reviews for abuse of discretion the district court's denial of a claim of prosecutorial misconduct in closing argument. United States v. Thompson, 560 F.3d 745, 750 (8th Cir. 2009) (citing United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000)). "Improper comments made by a prosecutor during closing argument may be grounds for reversing a conviction but only if those comments 'prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial.'" Id. (quoting United States v. Boone, 437 F.3d 829, 841 (8th Cir. 2006)).

Naholi argued during his closing argument that the government's case was weak because there was no DNA or other physical evidence connecting him to the rifle and only one person came forward and testified to seeing him, a seven-foot tall man from Kenya, holding a rifle in his front yard. Naholi also painted a picture for the jury that there was "commotion" caused when Davis yelled at Naholi to put the gun down and Karen yelled at Naholi to come inside. Naholi asked the jurors to use their common sense and own experiences about what happens when law enforcement officers show up in a residential neighborhood. "Your neighbors peek out the windows and everybody is trying to see what's going on. You might have some brave souls that open up their door, walk outside, and try to see what's going on. But you only heard Mattie Davis. That's it."

The prosecutor responded to the lack of corroborating witnesses by first noting that Naholi had no obligation to put on any evidence, but chose to do so. He reminded the jurors that the government bore the burden of proof and then argued:

And [Naholi] mustered one person, one person, Mr. Baxter to say he saw him with a cane. So what? Where's all these witnesses that the defense says are peeking out their window? Where are all the witnesses? They could have put them on, all the witnesses peeking out their windows.

[DEFENSE COUNSEL]: Objection, Your Honor, improper burden shifting.

THE COURT: Overruled.

[PROSECUTOR]: They could have called the witnesses. Sure, it's our burden, but once they put on witnesses, they have the right of subpoena power. They could subpoena witnesses who are peeking out their windows and watching this thing going on, to say, oh, he was just out there with a cane. That didn't happen. It didn't happen. And you know, again, this argument about people peeking out the windows, in a neighborhood, houses are close. When do they look out the window? When the police respond. When the lights come on. That's a little too late.

Naholi argued more than a mere lack of evidence that would give rise to reasonable doubt. He argued there was a commotion going on in the front yard, which necessarily should have grabbed the attention of neighbors. He argued the police presence at the house should have drawn the attention of neighbors that could have been called as witnesses. Naholi knew from discovery that the government did not have any other witnesses. Yet, he attempted to convince the jury that there could be more witnesses with information, but the government failed to produce them. Naholi's attack on the government's failure to produce other corroborating witnesses opened the door to allowing a response that pointed out Naholi could have called these unknown witnesses that he was referencing.

In responding to Naholi's arguments, the prosecutor correctly reminded the jury that the government bore the burden of proof and Naholi had no obligation to present evidence. Under these circumstances, we find no improper burden shifting. We also

find no improper burden shifting in the prosecutor's comment, which was not objected to, that Naholi could have cross-examined the witnesses regarding the lack of DNA or fingerprint evidence if that was crucial to the case.

## III.  Conclusion

We affirm the judgment of the district court.

_____