# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3687
_____

United States of America

*Plaintiff - Appellee*

v.

Alan E. Sanchez

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 26, 2024
Filed: November 8, 2024
[Unpublished]
_____

Before BENTON, ARNOLD, and KOBES, Circuit Judges.
_____

PER CURIAM.

After a jury found Alan E. Sanchez guilty of one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) and (b)(1)(B), the district court[1]

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri presided over trial and sentencing. The Honorable Jill A. Morris, United States Magistrate Judge for the Western District of Missouri

sentenced him to 97 months in prison. He appeals the denial of his motion to suppress evidence, his inability to consult with his attorney before answering certain questions, the limits on his cross-examination of Drug Enforcement Administration Agent Brandon Soles, and his sentence. We affirm.

## I. Motion to Suppress

At the suppression hearing, Detective Brandon Winders testified that he saw Sanchez exit a Greyhound bus in Kansas City, Missouri, carrying a suitcase. He explained that the suitcase looked large for a carry-on and that passengers often keep their luggage with them when it contains something valuable, like drugs or currency.

Winders testified that he identified himself as a police officer and asked to speak to Sanchez, telling him that he wasn't in any trouble. Sanchez allowed Winders to check his bus ticket and identification and claimed that he did not have anything illegal on him. When Winders asked if he could search the suitcase and offered to do so in a more private area, Sanchez replied, "[Y]es, that would be fine." Sanchez used his cellphone and carried his luggage as he followed Winders to the customer service area. Another officer went along. The suitcase contained a large package of cocaine.

At trial, Winders testified that after reviewing the surveillance footage, he could see that Sanchez was not carrying his suitcase when he got off the bus but that he had instead retrieved it from underneath the bus. Winders clarified that he did see Sanchez at the bottom of the bus's stairs and thought Sanchez had just gotten off the bus, even though that wasn't true. The district court found that the Government had not done anything improper and that Winders had made "a very understandable mistake."

handled the suppression hearing and wrote the report and recommendation on the motion to suppress, which the Honorable Greg Kays, United States District Judge for the Western District of Missouri, adopted.

Sanchez thinks that Winders lied at the suppression hearing and deliberately deceived the magistrate judge. While the district court did not clearly err in finding that Winders was only mistaken, see United States v. White, 41 F.4th 1036, 1038 (8th Cir. 2022) (noting that a credibility finding "can almost never be a clear error" (citation omitted)), the discrepancy between his suppression testimony and his trial testimony also does not matter on appeal. Because the initial encounter between Winders and Sanchez was not a seizure, Winders's reason for approaching Sanchez is irrelevant. See Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); Florida v. Bostick, 501 U.S. 429, 434–35 (1991) ("We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request to search his or her luggage—as long as the police do not convey a message that compliance with their requests is required." (citations omitted)).

While the district court found that Sanchez consented to the search, Sanchez argues that his consent was coerced because he was shaking in fear. But based on the circumstances described above, we don't think that the district court clearly erred in finding it was voluntary. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973) ("[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion . . . is a question of fact to be determined from the totality of all the circumstances.").

## II. Sixth Amendment

### A. Consulting with Counsel During Trial Testimony

The district court allowed jurors to submit questions to witnesses on notecards, which the court screened with the Government and defense counsel. Before Sanchez testified, the court asked whether he would answer juror questions. Sanchez agreed to and acknowledged that he had discussed the issue with his

attorney.  The court said that it would allow Sanchez to talk to counsel "about any question before it's asked."

After direct- and cross-examinations, the court asked if defense counsel wanted to "take a break and visit with your client about any of these [juror] questions."  The Government objected, arguing that Sanchez shouldn't have a chance to consider the questions before testifying.  The district court changed course, sustained the objection, but allowed Sanchez to decide whether he would answer the questions.  Sanchez decided to do so.

Now, Sanchez argues that his inability to confer with counsel after each jury question violated his Sixth Amendment right to counsel.  We disagree.  "[W]hen a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying.  He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice."  Perry v. Leeke, 488 U.S. 272, 281 (1989).  The district court did not err.  See id. at 280–82 (trial court did not err in ordering that the defendant not talk to his lawyer during a 15-minute recess between defendant's direct- and cross-examinations).

### B.  Limiting Cross-Examination

Criminal defendant Anthony Navarro testified against Sanchez at trial. During Agent Soles's cross-examination, defense counsel asked him about Navarro's proffer interview.  While Soles was present during the interview, he did not write the proffer report. When defense counsel asked whether the proffer report "mention[ed] Mr. Navarro talking about Mr. Sanchez getting his car fixed to be able to use it to smuggle drugs into the country," the Government objected.  The district court sustained the objection, which Sanchez now argues violated his Confrontation Clause rights.

Any error in sustaining the objection was harmless, given the substantial evidence of Sanchez's guilt and the marginal relevance of the question, which sought to impeach a convicted drug dealer through the contents of a report not in evidence by an officer who did not write it. See United States v. Naholi, 911 F.3d 897, 902 (8th Cir. 2018) (harmless error to exclude evidence of prior inconsistent statements of a government witness when further undermining of the witness's credibility "would not have had an impact in any significant way on the result").

## III. Upward Variance

In deciding to vary up from the Guidelines range of 63 to 78 months in prison, the district court relied in part on Navarro's testimony that Sanchez had previously engaged in drug trafficking. Sanchez argues that a jury had to make that finding. "Increasing a sentence based on judicially found facts would violate his rights only if the sentence exceeded the statutory maximum." United States v. Campbell, 6 F.4th 764, 777 (8th Cir. 2014) (as amended July 26, 2021). Because Sanchez's 97-month sentence is far below the 40-year statutory maximum sentence for his drug-possession conviction, 21 U.S.C. § 841(b)(1)(B)(ii), the district court did not err.

## IV. Conclusion

We affirm the district court's judgment.

_____